EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Appellant,

v.

ZIPPO MANUFACTURING
COMPANY, Appellee.

J. Gordon MATHENY, Appellant,

v.

ZIPPO MANUFACTURING
COMPANY, Appellee.

Nos. 82–5598, 82–5599.

United States Court of Appeals,
Third Circuit.

Argued April 27, 1983.

Decided July 29, 1983.

W. Sherman Rogers, Kenneth J. Burch-fiel (argued), E.E.O.C., Washington, D.C., for appellant E.E.O.C.

Robert A. Murphy (argued), Chaplin, Casner & Edwards, Boston, Mass., for appellant J. Gordon Matheny.

Mark D. Speaker, Henry J. Wallace (argued), Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee.

Before SEITZ, HIGGINBOTHAM, Circuit Judges, and BROTMAN, District Judge.*

* Honorable Stanley S. Brotman, United States    District Judge for the District of New Jersey,

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

J. Gordon Matheny and the Equal Employment Opportunity Commission ("EEOC"), on behalf of Jack A. Schelling, Arthur H. Schulte and Raymond J. Weinberg, appeal the district court's order granting Zippo Manufacturing Company's ("Zippo") summary judgment motion. Appellants claim that Zippo violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), because it terminated them as District Managers ("DM") when they turned 65. The ADEA only covers employees. The district court found the appellant DMs to be independent contractors, not employees, outside the purview of ADEA. Thus, the critical issue raised by this appeal is whether the district court erred in its determination that DMs under contract with Zippo were independent contractors who are not covered by ADEA rather than employees within the meaning of ADEA. Appellants challenge also the district court's order granting Zippo's motion for summary judgment and assert that a genuine issue of material fact exists concerning the degree of control Zippo exercised over its DMs. Because we believe that the district court did not err as a matter of law, we will affirm its order.

### I.

Zippo manufactures cigarette lighters and accessories. It engages DMs who sell a significant portion of its products to wholesale distributors and general retailers. Zippo has divided the United States into twenty-four sales districts and has entered into DM agreements with individuals and corporations with the stipulation that DMs may sell Zippo products only to wholesalers and retailers within the sales district specified in their respective DM agreements. These agreements may be terminated by either party on thirty days written notice for any reason or without giving any reason for the termination. Although Zippo might terminate a DM for serious customer complaints, its primary reason for termination is poor sales volume.

All of the agreements between Zippo and its DMs are essentially the same. Zippo pays its DMs a straight commission as a percentage of sales and offers bonuses based on sales. Although Zippo reimburses new DMs for expenses incurred in attending an initial orientation meeting, it does not reimburse DMs attending Zippo's annual sales meetings. Nor does Zippo reimburse DMs for any sales travel expenses. Apart from commissions and bonuses, Zippo provides no other financial benefits to its DMs. Zippo neither provides a retirement plan, health insurance, life insurance, profit sharing, nor other benefits such as sick leave or paid vacations.

Zippo reports to the Internal Revenue Service the commissions it pays to DMs on Form 1099-NEC, Statement for Recipients of Nonemployee Compensation. Zippo does not withhold income tax from these commissions, and it does not pay any social security tax for DMs. The DMs involved in this action all filed tax forms with the IRS as sole proprietorships and reported their income and expenses on Form 1040, Schedule C, entitled Profit (or Loss) from Business or Profession. Finally, appellant DMs used Schedule SE to pay their own social security self-employment tax.

Zippo exercises virtually no control over the DMs in their sale of Zippo products. Retaining only experienced salespersons, Zippo has no need to train or to direct DMs about how to sell its products. DMs set their own working hours and days as well as vacation time without consultation with or accountability to Zippo. Moreover, DMs may freely operate under the business form of their choice whether it be a sole proprietorship, as most DMs are, a partnership or a corporation. They may hire employees without regard to Zippo. DMs provide and finance their own work facilities, such as office space, office furniture, secretarial assistance, telephone and automobile. Zippo does, however, offer to and furnishes DMs with Zippo stationery, business cards, order

sitting by designation.

blanks and samples, but DMs are not required to use these materials.

The only significant accountability DMs provide to Zippo involves their volume of sales. Zippo's decision to renew a DM's contract depends upon the DM maintaining a volume of sales that Zippo considers satisfactory.

Appellants Schelling, Schultz, Weinberg and Matheny served as Zippo DMs for periods ranging from ten to over twenty years before being terminated pursuant to a clause contained in all DM agreements calling for the termination of an agreement when a DM reaches the age of 65. Zippo terminated appellants on thirty days written notice shortly after they turned 65.

As a consequence, appellants brought this action claiming that Zippo thereby discriminated against them in violation of ADEA, 29 U.S.C. § 623(a)(1). Zippo answered that appellants, as independent contractors, are not covered by ADEA which applies only to employees. After discovery and a pretrial conference, all parties moved for summary judgment. The District Court denied appellants' and granted Zippo's motion for summary judgment finding that appellants were independent contractors, not employees, for purposes of ADEA.

Appellants raise two issues in this appeal. First, they argue that the district court erred in granting Zippo's summary judgment motion because a genuine issue of material fact exists concerning the control Zippo exerted over appellants and the economic dependence of appellants upon Zippo. Second, they insist that the district court erred in applying an incorrect legal standard and in holding that DMs are independent contractors rather than Zippo employees under ADEA.

## II.

We address first appellants' claim that the district court erred in granting summary judgment. This legal issue involves the district court's determination, on the pleadings and evidence before it, that no genuine issue of material fact exists concerning Zippo's alleged requirement that appellants sell only Zippo products. Our scope of review of a district court's order granting summary judgment is well established. We have said:

On review the appellate court is required to apply the same test the district court should have utilized initially. Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt. (footnote omitted.)

*Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

Thus, as to the issue of exclusivity, we must affirm the district court's order unless we find that a genuine issue of material fact exists. The district court held that Zippo preferred, but did not require, its DMs to sell only Zippo products. The court's holding was based upon evidence showing that (1) other, non-party DMs sold products other than Zippo's; (2) no plaintiff was ever terminated for selling other products; (3) no plaintiffs ever attempted to sell other products; and (4) plaintiffs interested in selling other products merely followed Zippo's preference. Joint Appendix ("JA") at A324.

Appellants, of course, insist that Zippo required them to sell only Zippo products as a condition of their role as Zippo DMs. Moreover, they argue that they believed they were under an inflexible rule prohibiting them from selling other products and did not do so. They contend that, because Zippo required them to sell only Zippo products, they were economically dependent upon Zippo. Thus, appellants conclude that the control Zippo exercised over them as evinced by Zippo's requirement of exclusivity and that the economic dependence that resulted from this requirement of exclusivity are sufficient to show that they were

Zippo employees within the meaning of ADEA. They further contend that the DMs that sold other product lines were large corporate entities from which Zippo was unable to gain adherence to its exclusivity requirement. Thus, appellants argue that these corporate DMs are distinguishable exceptions that evidence Zippo's requirement of exclusivity from small, controllable DMs such as appellants.

▮ Our review of the evidence in the light most favorable to appellants and taking their allegations as true fails to persuade us that the district court erred in concluding that no genuine issue exists concerning Zippo's alleged requirement that appellants sell only Zippo products.** Moreover, appellants' allegations regarding exclusivity do not concern a material fact. Rule 56 of the Federal Rules of Civil Procedure and case law require that a genuine issue exist concerning *material* facts to set aside a district court's summary judgment. *See Tomalewski v. State Farm Life Insurance Company,* 494 F.2d 882, 884 (3d Cir. 1974). The need for materiality inheres in the purpose of resolving disputes by summary judgment: "to eliminate a trial in such cases where a trial is unnecessary and results in delay and expense." *Id.* We believe that, on the record before us, even if Zippo did require appellants to sell only Zippo products, and even if appellants were totally dependent on the income they earned from Zippo because of the requirement of exclusivity, these two factors would not be sufficient to make these DMs Zippo employees.

Therefore, we hold that the district court did not err in disposing of this case on summary judgment.

### III.

Although the Age Discrimination in Employment Act has such a laudable title that might induce laymen to infer that the statute was designed to prevent *all* age discrimination against those who work for a living, its congressional purpose was far less exten-sive since it prohibits only some types of age discrimination. Although some people who discriminate against the aged might offend an increasingly shared social value which condemns such discrimination, such discrimination would not thereby violate any federal law unless it was specifically prohibited by Congress.

In this case, we are concerned with 29 U.S.C. § 623(a)(1) of ADEA which provides:

(a) It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . .

In addition to its language, the legislative history of this statute, 1967 U.S.Code Cong. & Ad.News 2214–27, evinces the clear legislative intent to prohibit "age discrimination by employers against employees and applicants for employment." *Levine v. Fairleigh Dickinson University,* 646 F.2d 825, 828 (3d Cir.1981). Therefore, if appellants were not Zippo employees, ADEA is not applicable to their cause and their allegation that Zippo violated ADEA in terminating them because they reached the age of 65 must be rejected.

When Gertrude Stein penned her oft-quoted "A rose is a rose is a rose is a rose," she was implying some universal qualities that defined and identified the 100 to 200 species of the flowering shrubs of *Rosa.* In contrast to the rose, when one examines the plethora of federal cases construing the varied and disparate federal statutes (ranging from the Internal Revenue Code, the Social Security Act, the Federal Labor Standards Act, Title VII of the 1964 Civil Rights Act to the Longshoreman's and Harbor Workers Compensation Act, etc.) one discovers the notable absence of comparable universal qualities that define and identify the status of employee so as to fit its meaning within all common law and statutory

---

** Chief Judge Seitz believes there was an issue of fact as to exclusivity. However, he agrees that the issue is not material because it is not outcome determinative.

definitions. Therein lies the reason for the paradoxical truth that even when the same person performs the same acts at the same time in the same place under the same conditions conceivably he could *not* be considered an employee under some common law standards and some federal statutory definitions while he nevertheless could be considered an employee under those of others. This absence of a universality in qualities and definition unavoidably breeds ambiguity and confusion requiring courts to assess a broad spectrum of facts in their quest to clarify and determine who is and who is not an employee.

Even before courts assess the facts, they must first decide upon the proper method of assessment. Thus, in order to decide whether appellants were Zippo employees, we must first determine how employee status is shown for purposes of ADEA. For this purpose, we are not without some guidance.

Prior to 1947, courts distinguished an employee from an independent contractor by using a common law test of the degree of control over the individual's work performance exercised by the alleged employer over the individual whose status was in dispute. If the alleged employer had the right to determine not only what work should be done but also how it should be done, then the worker was deemed to be an employee. *See United States v. Silk,* 331 U.S. 704, 714 n. 8, 67 S.Ct. 1463, 1468 n. 8, 91 L.Ed. 1757 (1947).

In 1947, however, the United States Supreme Court held that the common law "right to control" test was too narrow for use in deciding employee status for the purposes of far reaching social legislation such as the Social Security Act. *Bartels v. Birmingham,* 332 U.S. 126, 130, 67 S.Ct. 1547, 1549–1550, 91 L.Ed. 1947 (1947). Accordingly, the court enunciated what has come to be known as the "economic realities" test. The Court declared:

> Obviously control is characteristically associated with the employer-employee relationship, but in the application of social legislation employees are those who as a

matter of economic reality are dependent upon the business to which they render service. In *Silk,* we pointed out that permanency of the relation, the skill required, the investment in the facilities for work, and opportunities for profit or loss from the activities were *also factors* that should enter into judicial determination as to the coverage of the Social Security Act. It is the total situation that controls.

*Id.* (emphasis added.) The Supreme Court's language and its reliance on *Silk, supra,* suggest that it did not intend to displace control as a factor in determining an individual's status as an employee. Justice Stanley F. Reed wrote the opinions in both *Silk, supra,* and *Bartels, supra,* which were delivered one week apart on June 16 and 23, 1947 respectively. In *Silk, supra,* Justice Reed declared that, in determining whether an individual is an employee for purposes of the Social Security Act,

> the courts will find that degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation are important for decision. No one is controlling nor is the list complete.

*Id., supra* at 716, 67 S.Ct. at 1469. Justice Reed echoed this last quoted sentence in an opinion delivered on the same day in which the Court determined whether individuals were employees under the Fair Labor Standards Act: "the determination of the [employer-employee] relationship does not depend on ... isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corporation v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947).

In the wake of these three decisions courts evolved two different standards to determine employee status for purposes of social legislation. The standard used depends upon the legislation involved. The "economic realities" standard is generally used in cases involving the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. Donovan v. Sureway Cleaners,* 656 F.2d

1368, 1370 (9th Cir.1981); *Usery v. Pilgrim Equipment Company, Inc.,* 527 F.2d 1308, 1311 (5th Cir.1976), *cert. denied,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976). In these cases, it is the "degree of [economic] dependence of alleged employees on the business with which they are connected . . . that indicates employee status." *Usery v. Pilgrim Equipment Company, Inc.,* 527 F.2d at 1311. The courts based their determinations of the individuals' economic dependence upon the factors listed in *Bartels, supra,* and *Silk, supra,* and added others such as the importance of the service to the alleged employer's business. *Donovan v. Sureway Cleaners,* 656 F.2d at 1370.

Other courts have applied a hybrid of the common law "right to control" standard and the "economic realities" standard to determine employee status for purposes of Title VII, 42 U.S.C. § 2000e *et seq. Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 341 (11th Cir.1982); *Unger v. Consolidated Foods Corporation,* 657 F.2d 909, 915 n. 8 (7th Cir.1981); *Spirides v. Reinhardt,* 613 F.2d 826, 831–32 (D.C.Cir.1979). These cases hold that "it is the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee that are determinative." *Cobb v. Sun Papers, Inc.,* 673 F.2d at 341. Thus, these courts applied "a hybrid approach which looks at the economic realities of the situation but focuses on the employer's right to control the employee as the most important factor in determining employee status." *Hickey v. Arkla Industries, Inc.,* 699 F.2d 748, 751 (5th Cir.1983). Therefore, "the extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor" among the various factors that a court must consider under this hybrid standard. *Spirides v. Reinhardt,* 613 F.2d at 831. Other factors that enter into a court's determination of employee status under this hybrid standard are:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision;

(2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties. *Id.* at 832.

Courts have thus refrained from using the broader "economic realities" test in Title VII cases. The reason given for the use of the narrower hybrid standard is

that there is no statement in the [Civil Rights] Act or legislative history of Title VII comparable to one made by Senator Hugo Black (later Justice Black), during the debates on the Fair Labor Standards Act, that the term 'employee' in the FLSA was given 'the broadest definition that has ever been included in any one act.' (citations omitted.)

*Cobb v. Sun Paper, Inc.,* 673 F.2d at 340. In addition, while expressing the desirability of eliminating discrimination in all business enterprises, the court concluded that Congress had a more limited objective in enacting Title VII, namely, to eliminate discrimination in employment only. *Id.* Finding that "Congress [did not intend] the words of the statute to have anything but their ordinary meaning as commonly understood," *id.,* the court concluded that "the term 'employee' in cases under Title VII is to be construed in light of general common law concepts." *Id.* at 340–41. Consequently, the hybrid "right to control/economic realities" standard is the proper test of employee status for the purposes of Title VII.

What we must decide now is whether the "economic realities" standard used in FLSA

cases or the hybrid "right to control/economic realities" standard is the proper test to determine whether an individual is an employee for purposes of ADEA.

## IV

The question of which standard of employee status is applicable to ADEA cases is one of first impression. Appellants argue that the proper standard in ADEA cases such as this one is the economic realities standard. They insist that under the economic realities standard they must be deemed employees for ADEA purposes because of their economic dependence upon Zippo. We disagree with both of appellants' contentions.

■ The Supreme Court has observed that ADEA is a hybrid of both FLSA and Title VII. *Lorillard v. Pons,* 434 U.S. 575, 578, 98 S.Ct. 866, 868–869, 55 L.Ed.2d 40 (1978). The Court found that Congress "intended to incorporate fully the remedies and procedures of the FLSA." *Id.* at 582, 98 S.Ct. at 871. Thus, ADEA's scope for purposes of procedure and remedies is determined by FLSA. However, the substantive "prohibitions of the ADEA were derived *in haec verba* from Title VII." *Id.* at 584, 98 S.Ct. at 872. Therefore, the scope of its substantive prohibition of discrimination in employment is determined by Title VII. The determination of employee status is a question relating to the substantive prohibitions of ADEA and not to its remedies and procedures. Consequently, the hybrid standard that combines the common law "right to control" with the "economic realities" as applied in Title VII cases is the correct standard for determining employee status under ADEA.

■ Under this hybrid standard as interpreted by the Court in *Spirides v. Reinhardt, supra,* appellants would be considered independent contractors for ADEA purposes. Zippo exercised virtually no control over the means and manner of appellants' sales practices. Although the district court found that Zippo kept track of appellants' sales, it correctly concluded that this

monitoring did not amount to supervision over appellants' work performance. JA at A326. Indeed, appellants had the independence to establish their own business organizations, hire employees and contact any customers within their territories. They were not required to account to Zippo for their daily activities. Appellants were clearly skilled workers who had the right, along with Zippo, to terminate their relationship as Zippo's DMs without explanation on thirty days notice.

Moreover, DMs were paid a commission as a percent of sales rather than a salary. Thus, their potential for profit or loss was primarily a product of their own initiative and was within their control. Similarly, they furnished their own equipment and places of work and absorbed all of the expenses incurred in their sales efforts. They received no paid annual leave; they accumulated no retirement benefits, and they paid their own social security taxes.

In this case, only the length of time appellants worked as DMs points toward their status of employees. Therefore, even if appellants were required to sell only Zippo products, and even if they were economically dependent on the income they earned as Zippo DMs, these factors are not sufficient to establish that they were employees when balanced against the other factors that tend to establish their status as independent contractors. In any event, we believe that appellants were independent contractors even under the more liberal "economic realities" standard as applied in FLSA cases. *See Hickey v. Arkla Industries, Inc., supra.*

## CONCLUSION

The district court purported to apply the economic realities test in assessing appellants' status as independent contractors. It appears instead to have applied the hybrid standard. The district court's error did not produce a wrong result. The district court's holding that appellants were independent contractors and not employees for the purposes of ADEA and its consequent

order granting Zippo's motions for summary judgment will be affirmed.