**HOSPITAL RESOURCE PERSONNEL,
INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CV 194–53.

United States District Court,
S.D. Georgia,
Augusta Division.

June 17, 1994.

Thomas Reuben Burnside, Jr., Burnside, Wall, Daniel, Ellison & Revell, Augusta, GA, for plaintiff.

Edmund Alexander Booth, Jr., Augusta, GA, James B. Thompson, Jr., Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## ORDER

BOWEN, District Judge.

Before the Court in the above-captioned case are Plaintiff Hospital Resource Personnel, Inc.'s Motions for Preliminary Injunction, Permanent Injunction and Summary Judgment. Plaintiff seeks a refund of $82.27 (including interest and penalties) paid to the Internal Revenue Service ("IRS") for employment taxes on one of its nurses, and Plaintiff also seeks to restrain and enjoin the United States of America, through officers and agents of the IRS, from enforcing a Federal tax lien exceeding $1,000,000.00 on Plaintiff's assets and from implementing other efforts to collect certain assessed taxes. The Court granted Plaintiff's Motion for a Temporary Restraining Order in this matter by Order of June 3, 1994.

### I. Background

Plaintiff's officer David Barbee, through a sworn affidavit and through sworn testimony at the May 25, 1994, hearing on this matter, has submitted evidence in the record reflecting the following undisputed facts. Plaintiff operates a registry of nurses from which hospitals in the Augusta and the surrounding Central Savannah River Area may fill additional staffing needs when high patient censuses require extra on-duty nurses. When the nurses complete their agreed-upon services for the hospitals, they submit completed time sheets to Plaintiff's office. Plaintiff pays the nurses an hourly rate and then receives payment from its client hospitals for the hours the nurses actually worked.

Plaintiff's nurses are free to work as many hours as desired and are free to accept employment directly from Plaintiff's hospital clients or from other sources. Plaintiff does not provide nurses on its registry with transportation, uniforms, or any equipment required for the performance of their duties. Plaintiff has no control over the manner and means of the work of the nurses on its registry; rather, the nurses themselves, applicable state laws regarding licensed registered and practical nurses, and, to some extent, the physicians at the client hospitals determine the manner and means of the nurses' work. Evaluation forms are used only to determine whether a particular client would favor or oppose future referrals of the evaluated nurse. A CPR course, taught by an independent nurse instructor and paid for by the individual nurses choosing to enroll in the course, is the only training with which Plaintiff had any involvement.

From its inception, Plaintiff has consistently treated the nurses on its registry as independent contractors. Neither Plaintiff nor any predecessor has ever treated the nurses on Plaintiff's registry as employees of Plaintiff for withholding tax purposes. Plaintiff has consistently given its nurses and filed with the IRS the required 1099 Information Returns so that the nurses could meet their tax obligations under the Self–Employment Contribution Act. See Plaintiff's Exh. 1, Hearing of May 25, 1994.

Plaintiff has treated its nurses as independent contractors for withholding tax purposes in reliance on judicial precedent (including published revenue rulings) and the advice of several certified public accountants and tax attorneys who have advised Plaintiff throughout its existence. Plaintiff's only significant competitor in Plaintiff's operating area—ATC Nursing Services—also treats the nurses on its registry as independent contractors for withholding tax purposes, and was nevertheless given a "clean bill of health" in an IRS audit in 1991.[1]

The above-stated facts are undisputed. The United States has not filed an opposing statement of disputed material facts or any opposing affidavits setting forth "such facts as would be admissible in evidence," Rule 56(e), Fed.R.Civ.P., but instead has relied in support of its case on the sworn declaration of Revenue Officer Merritt J. Swinney adopting his prior report summarizing his investigation of Plaintiff.

The IRS has assessed taxes apparently in excess of $1,144,000.00 against Plaintiff. It seems certain that the enforcement of this assessment would extinguish any hope of continuing Plaintiff's business. The IRS claims that the nurses on Plaintiff's registry were employees rather than independent contractors and that Plaintiff should have withheld employment taxes on all payments made to Plaintiff's nurse employees. As discussed above, Plaintiff disputes the IRS's claim and now seeks 1) a refund of $82.27 representing employment taxes paid to the IRS on one of Plaintiff's nurses, and 2) injunctive relief prohibiting the government from asserting its federal tax lien or from otherwise collecting the additional taxes assessed.

## II. Analysis

### A. Standard for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party

---

1. As the Court noted in footnote 2 of its Order of June 3, 1994, a prior audit of another taxpayer is insufficient to place Plaintiff within the safe haven provision of § 503(a)(2)(B). Plaintiff itself must have been audited for this provision to apply.

Such an audit might, however, provide Plaintiff with an additional "reasonable basis" under the general haven provisions of § 503 for its treatment of its nurses as independent contractors.

has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case ..., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark*, 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark*, 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried its burden as set forth above. *See Clark*, 929 F.2d at 609 n. 9.

B. Summary Judgment in the Present Case

As stated in the Court's Order of June 3, 1994, the Court is mindful of the Anti–Injunction Act, 26 U.S.C. § 7421, and its strong mandate against restraining the government's efforts in the collection of assessed taxes. The Court also notes, however, that the Anti–Injunction Act is not an absolute prohibition against such interference. The Supreme Court has determined that an exception to the Act exists in certain limited circumstances. *See Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932); *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). If a taxpayer can show 1) that under no circumstances can the government ultimately prevail on the merits, and 2) that equity jurisdiction otherwise exists, then the taxpayer's suit may be maintained in district court to enjoin the collection of taxes. *Enochs, supra* at 7, 82 S.Ct. at 1129.

Under the standards set forth above, The United States has failed to meet its burden in opposition to Plaintiff's Motion for Summary Judgment. Revenue Officer Swinney's report, the only sworn "evidence" submitted by the United States, is replete with hearsay, opinions, and legal conclusions; the declaration and report are therefore inadmissable. Fed.R.Civ.P. 56(e); *Newsome v. Webster*, 843 F.Supp. 1460, 1467 (S.D.Ga. 1994); *see generally* 10A Charles A. Wright, Arthur R. Miller, and Mary K. Kane, *Federal Practice and Procedure*, § 2722 at 57–58 (2d ed 1983).[2] The Officer's statement contains

---

2. Even if the report were admissible, it would    still be insufficient to refute any of Plaintiff's

little, if any, information within his personal knowledge. It is merely a restatement of his audit conclusions.

■ The undisputed facts in the record establish, as a matter of law, that the United States cannot under any circumstances and under the facts viewed in the light most favorable to the United States, *Enochs, supra*, prevail on the merits of this case.

The undisputed facts in the record show that Plaintiff "*shall be treated* as having a reasonable basis" for treating its nurses as independent contractors rather than employees, § 530(a)(2) of the Revenue Act of 1978, Pub.L. 95–600, 92 Stat. 2763, 2885–86 (November 6, 1978) (codified at 26 U.S.C. § 3401 note (1982) (as amended), and thus that Plaintiff is entitled to the protections of the "safe haven" provisions of § 530(a)(1)(B) and (a)(2). Counsel for the United States acknowledges that these provisions apply in the present case (*see* Response number 3 of United States to Local Rule 8.6 Interrogatories).

According to House Report No. 95–1748, 95th Cong., 2d Sess. 3–4 (1978), Section 530 was intended to protect a taxpayer from employment tax liability "if a taxpayer had *any reasonable basis* for treating its workers as other than employees" (emphasis added). Significantly, the report further states that "[t]he committee intends that this reasonable basis requirement be *construed liberally in favor of the taxpayers.*" *Id.* at 631–32 (emphasis added).

There are three specific statutory safe havens, two of which apply to protect the taxpayer in the present case. First, under § 530(a)(2)(A), a taxpayer shall be treated as having a reasonable basis for treating its

workers as independent contractors if the taxpayer relied for such treatment on judicial precedent, published revenue rulings, or technical advice from tax professionals. The undisputed evidence in this case establishes that Plaintiff acted in reasonable reliance on the technical advice of several certified public accountants and tax attorneys in treating its nurses as independent contractors.

The evidence also shows that Plaintiff acted in reasonable reliance on judicial precedent, including published revenue rulings. *E.g.*, Revenue Ruling 61–196, 1961–2 CB 155 (finding registered and practical nurses to be skilled professionals who ordinarily have full discretion in administering their services and are considered independent contractors in the performance of private duty nursing services). Plaintiff's reliance on professional technical advice and published revenue rulings clearly place Plaintiff within the safe haven provisions of § 530(a)(2)(A).

■ The second applicable statutory safe haven is the taxpayer's reasonable reliance on the practice of a significant segment of the industry. Section 530(a)(2)(C). David Barbee's sworn statements indicate that Plaintiff's only significant competitor in Plaintiff's geographical area of operation is ATC Nursing Services located in Martinez, Georgia. Barbee's statements indicate that ATC Nursing Services, like Plaintiff, treats the nurses on its registry as independent contractors for withholding tax purposes. Including Plaintiff, both active nursing registries, or 100% of the industry, in Plaintiff's operating area treat their nurses as independent contractors. This clearly constitutes a "significant segment" of the industry.[3]

---

claimed bases for safe haven in this action. *See, e.g., infra*, n. 3. Plaintiff's evidence establishes that it clearly shall be treated as having a reasonable basis for its treatment of the nurses on its registry.

**3.** Even under Revenue Officer Swinney's inadmissible hearsay and conclusory version of industry practice, Plaintiff would still prevail as a matter of law.

Revenue Officer Swinney's survey found that 4 placement agencies in the Augusta area treated their workers as independent contractors, and 4

treated their workers as employees, amounting to a 50%/50% split. When expanding the survey to Columbia, South Carolina, he found a total of 7 treating their workers as independent contractors and 11 treating their workers as employees, amounting to a 39%/61% split.

If these statements were considered and assumed to be an accurate survey of businesses within Plaintiff's industry, Plaintiff would still prevail as matter of law since the figures show a significant segment of the industry (50% and 39% of businesses) treating workers as independent contractors.

■ In addition to the two specific statutory safe havens just discussed—either of which, *standing alone,* would be enough to protect the taxpayer on the merits of this case—there is also one "general haven" under which a taxpayer who shows some other reasonable basis for treating its workers as "other than employees" (i.e., as independent contractors). Section 530(a)(1)(B). A reasonable basis under the general safe haven may be established through reference to the twenty common law indicia of an employee/employer relationship, the most significant of which is the right to control the manner and means of the person's work. *See* Rev. Rul. 87–41, 1987–1 C.B. 296; *Chase Mfg., Inc. v. U.S.,* 446 F.Supp. 698 (D.C.Mo.1978).

■ The undisputed facts in the present case establish that Plaintiff had a reasonable basis for treating its workers as independent contractors under the general safe haven provision of § 530. Plaintiff does not and cannot control the manner and means of its nurses' work, *see* Affidavit and testimony of David Barbee; Rev.Rul. 61–196, *supra;* Georgia Registered Professional Nurse Practice Act, O.C.G.A. § 43–26–1, et seq., and Georgia Practical Nurses Practice Act, O.C.G.A. § 43–26–30, et seq.; the nurses, not Plaintiff, control when, how often, where, and all of the details of how their work is performed; the nurses are responsible for their own training and certification; each individual nurse is very loosely integrated into Plaintiff's business; the nurses do not work on Plaintiff's premises; the nurses (or the hospitals) pay for their transportation, uniforms, and all other expenses in performing their work; the nurses are free to work directly for the client hospitals or for other agencies if they so desire. These and other factors clearly indicate Plaintiff's reasonable basis for treating its nurses as independent contractors, and thus Plaintiff's entitlement to the general safe haven provisions of § 530.

■ Based on the safe haven provisions discussed above, all of which Congress intended to be construed liberally in favor of the taxpayer, H.R.Rep., *supra,* Plaintiff has established its entitlement to success on the merits of this case.

It also appears that Plaintiff will suffer irreparable injury if the government's collection efforts are not restrained. Plaintiff's assets pale in comparison to the taxes assessed against it, and, according to the testimony of David Barbee, the collection efforts threatened to commence June 3, 1994, would effectively force Plaintiff out of business. Irreparable injury is insufficient by itself to justify jurisdiction in the face of the Anti–Injunction Act, but when coupled with the United States's clear inability to prevail on the merits, jurisdiction becomes appropriate.

Finally, resort to equity is appropriate in the present case since Plaintiff is without an adequate remedy at law. Plaintiff lacks the assets to pay the assessed taxes and then bring a suit for refund. It is extremely unlikely that Plaintiff would be able to secure a loan to pay the assessed taxes on what, to a lending institution, would appear to be speculation as to Plaintiff's ultimate chances of prevailing in a refund suit. If the United States's collection efforts are not enjoined, then Plaintiff's assets will be seized and Plaintiff will be out of business. There is considerable uncertainty that Plaintiff could have petitioned the Tax Court for a redetermination of its liability prior to payment. Indeed, the Tax Court may not have jurisdiction over employment tax assessments. *Joy v. Commr.,* T.C.Memo 1991–543, 1991 WL 225946.

Plaintiff's Motions for Summary Judgment and for Permanent Injunction are GRANTED. The United States shall cease its efforts to collect the employment taxes assessed against Plaintiff herein and its tax lien on Plaintiff's assets is annulled. Plaintiff is entitled to a refund in the amount of $82.27 (representing the amount of employment taxes, penalties, and interest paid on one of Plaintiff's nurses). The Clerk of the Court shall enter JUDGMENT in favor of Plaintiff and against Defendant in accordance with this Order and shall CLOSE the case.