**In re Pearl B. SERINO, t/a Serino's Nurses Registry, Debtor.**

Bankruptcy No. 5–93–00215.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

Oct. 16, 1995.

Kevin Walsh, Wilkes–Barre, PA, Carmen Latona, Wilkes–Barre, PA, for debtor.

Greg Stefan, Washington, DC, for I.R.S.

Charles DeHart, Trustee in Bankruptcy, Hummelstown, PA.

## *OPINION AND ORDER*

JOHN J. THOMAS, Bankruptcy Judge.

Pearl B. Serino t/a Serino's Nurses Registry is in Chapter 13 bankruptcy having filed for same on February 4, 1993.

Objections have been filed to the bankruptcy plan alleging the Debtor has not arranged for the full payment of priority taxes pursuant to 11 U.S.C. § 1322(a)(2). The Debtor responds to the objection of the IRS by asserting that she was not responsible for the specific tax assessed against her. Contemporaneous with the objection to the plan, the court heard Debtor's objection to the proof of claim of the IRS. These litigations were consolidated for trial.

The Debtor denies liability to the Internal Revenue Service. The IRS has assessed various trust fund taxes against Ms. Serino arguing that between 1986 and 1988 she employed various nurses for which she was responsible for withholding FICA and FUTA taxes pursuant to 26 U.S.C. § 3101 et seq. and 26 U.S.C. § 3301 et seq. Serino responds that these nurses were not her employees but rather independent contractors, the withholding for which she was not responsible. The court is thus confronted with the classic battle between the Internal Revenue Service and the proprietor as to the relationship that a business owner might have had with their assistants.

█ Unquestionably, the "right to control" test has been the most important index of the relationship between the entities. *Equal Employment Opportunity Commission v. Zippo Manufacturing Co.,* 713 F.2d 32 (3rd Cir.1983). *American Consulting Corpora-*

*tion v. United States,* 454 F.2d 473 (3rd Cir.1971). Employer/employee relationships are generally deemed to exist when a person for whom services are performed has a right to control and direct not only the result but also the details and means by which the result is to be accomplished. *Treasury Regulation* § 31.3121(d)–1(c) (26 C.F.R. § 31.3121(d)–1(c)).

█ Even though the "right to control" factor is an important factor, it is neither the only factor nor is it the controlling factor. *American Consulting Corp. v. United States,* 454 F.2d 473, 477 (3rd Cir.1971). The court has generally weighed a multitude of other considerations in adjudicating the final result. Twenty-four (24) of those factors are set forth in *In re Compass Marine Corp.,* 146 B.R. 138 (Bankr.E.D.Pa.1992). Those twenty-four (24) factors are briefly identified as follows:

1. Instructions;
2. Training;
3. Integration;
4. Services rendered personally;
5. Hiring, supervising and paying assistants;
6. Continuing relationship;
7. Set hours of work;
8. Full time required;
9. Doing work on employer's premises;
10. Order or sequence of tasks set;
11. Oral or written reports;
12. Payment by hour, week or month;
13. Payment of business and/or travel expenses;
14. Furnishing of tools and materials;
15. Significant investment;
16. Realization of profit or loss;
17. Working for more than one firm at a time;
18. Making service available to the general public;
19. Right to discharge;
20. Right to terminate;
21. Industry practice or custom;
22. Intent of the parties—how they view the relationship;

23. Written, signed independent contract or agreements; and

24. Employee-type benefits provided.

While we will discuss these factors at a later time in this opinion, they generally identify indicators suggesting that the right to control has shifted from the operator to the assistant (making the assistant more likely to be considered an independent contractor rather than an employee).

■ This is not to imply that a balancing of these factors would end our inquiry. In 1978, Congress enacted Section 530 of the Revenue Act (26 U.S.C.A. § 3401 note).[1] That section, known as the "safe haven" defense, provides that a taxpayer who can demonstrate a reasonable basis for the treatment of an individual in some other manner than as an employee is entitled to termination of employment tax liabilities. This would suggest that even if the IRS could persuade the court that a consideration of the factors required a finding that the Debtor's relationship with her private nurses is that of employer-employee, the Debtor would still have the opportunity to establish a "reasonable basis" for treating her nursing assistants as other than employees.

■ As if this did not provide a sufficient test of our analytical talents, the court is also required to reconcile the competing burdens placed upon the parties by decisional case law. The proof of claim is prima facie evidence of its validity. *In re Allegheny International, Inc.*, 954 F.2d 167 (3rd Cir. 1992). Nevertheless, the burden of persuasion remains on the claimant (IRS). *Id.* The burden of defeating an Internal Revenue Service assessment is on the taxpayer. *Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935). *Anastasato v. Commissioner*, 794 F.2d 884 (3rd Cir.1986). The burden of establishing an exception to discharge is on the creditor. *In re Cohn*, 54 F.3d 1108 (3rd Cir.1995). The burden of showing the reasonableness of the treatment of its workers under the "safe haven" defense is on the taxpayer. *In re Rasbury*, 141 B.R. 752, 757 (N.D.Ala.1992). *In re Compass Marine Corp., supra.*

While we relish the opportunity to evaluate the facts and apply the applicable law, the court is somewhat disappointed that the taxpayer chose not to support her position with a brief even though represented by two lawyers.

■ Since our inquiry is fact intensive, a review of the evidence is imperative.

Pearl Serino was the owner and operator of Serino's Nurses Registry. She was an L.P.N. engaged in business at least since 1986. The business was licensed in Harrisburg. The operation was located at 130 Church Street, Kingston, Pennsylvania, in the basement of Ms. Serino's home. She worked there alone with a minimal amount of office equipment. The apparent business of Serino's Nurses Registry was to place nurses with patients requiring nursing assistance. Patients were located in hospitals, nursing

---

**1.** (a) Termination of certain employment tax liability.—

(1) In general.—If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then for purposes of applying such taxes with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) Statutory standards providing one method of satisfying the requirements of paragraph

(1).—For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

homes and private homes. Patients were not solicited. Rather, by word of mouth, various hospitals, nursing homes·and private individuals as well as other nurses would contact Serino's Nurses Registry for a nursing assistant.

In order to provide this service, the Debtor maintained a list of Registered Nurses (R.N.s), Licensed Practical Nurses (L.P.N.s), and nurses' aides for placement with various patients. These individuals who would register, often heard about Serino's Nurses Registry through other nurses or, sometimes, through advertising. In order to qualify to be added to the registry, a nurse had to have a state license, malpractice insurance and be knowledgeable in cardiopulmonary resuscitation (CPR). The insurance was obtained by the individual nurses and not the Debtor.

None of the nurses were required to work exclusively for Serino's. When patients at a hospital or the family would call for nursing assistants, the Debtor would give them the name of a nurse on the registry.

Sometimes, the family hiring the nurse through Serino's would terminate the service through Serino's and hire the individual nurse on their own. This effectively terminated the compensation that the Debtor would receive.

The Debtor denied supervising any of the nurses who she placed with patients. She would neither call nor check on their performance nor was the nurse required to contact Serino's. The relationship of the nurse and the patient was entirely a matter between those two parties. The nurses were not provided with vacation time nor life insurance, health insurance or disability insurance and no taxes were withheld.

Upon entrance into the office, a large sign about six to seven feet long would advise prospective applicants that they had to pay their own taxes, get their own malpractice insurance, and know C.P.R. For a short time in 1988, the Debtor maintained workmen's compensation insurance for the nurses. She obtained workmen's compensation because of the requirement of a certain nursing home.

Serino did not file 1099 forms until 1989 when she was advised to do so after an audit. Until then, she was unaware that such filings were required.

Financially, patients or, in some cases, the nursing home or insurance company compensated Serino who would deposit the payment, take a certain percentage for her business and send the balance to the nursing assistant. If Serino is not paid for a certain project, then the nurse who supplied the care in that project would not get paid. Serino did not furnish any uniforms nor did she pay for transportation, journals or furnish the modest equipment that a nurse might have such as a blood pressure gauge.

Once a month, the state inspector visited Serino's office. Serino, who has a state issued employment agent's license, started the business in 1980.

While Serino denied having any rules or regulations other than the requirements for malpractice insurance, a state license and C.P.R. training, some of the documents that she utilized contained a requirement that a registry nurse "abide by [Serino's] rules and regulations".

During the trial, a document was identified setting forth certain "grounds for termination policy". Serino denied that this document was ever actually utilized in the business.

Serino denied ever paying any nurse association dues for the nurses that were registered with her but she did acknowledge that she paid for three people to attend a seminar.

Serino acknowledged that she made no investigation as to how other nurses registry services operated in the area and whether they treated their nurses as employees or independent contractors.

On June 22, 1989, Ms. Serino answered a questionnaire with an Internal Revenue Service agent. The answers to that questionnaire were basically consistent with the testimony of Ms. Serino at the trial in 1994.

Government exhibits numbers 9, 10 and 11 were documents located on the site during an audit and labeled, respectively, Serino's

Nurses Registry (Obligations); Job Description—Licensed Nursing Personnel; and Serino's Nurses Registry Grounds for Termination Policy. The Debtor denied that any of the documents were actually utilized in the business. Rather, she explained that they were under consideration pending an expansion of the business, which plan was terminated because of illness in her family.

The question we address is whether the nurses registering with the Debtor are the "employees" of the Debtor within the provisions of the Federal Insurance Contributions Act (FICA) 26 U.S.C. § 3101 et seq. and the Federal Unemployment Tax Act (FUTA) 26 U.S.C. § 3301 et seq.

 In companion cases before the United States Supreme Court, a significant effort was made to explain the differences between an employee and an independent contractor. *Bartels v. Birmingham,* 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947); *United States v. Silk,* 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). Not all who render service to an industry are considered employees. *U.S. v. Silk, supra,* at 712–14, 67 S.Ct. at 1468. A review of *Silk, Bartels,* and the subsequent United States Supreme Court case of *United States v. W. M. Webb, Inc.,* 397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970), bolstered a conclusion that the traditional common law test (right to control) remains intact as the principal factor in determining whether an employer-employee relationship exists.[2]

*Silk* and *Bartels* did not, however, stop at the common law test but specifically expanded that definition in a less constricted way to encompass the "economic reality" of those who are dependent upon a business to which they render a service to also be considered employees. The need to view the employer-employee relationship in an expanded way was deemed necessary because of the fact that the legislation in question was presumably drafted to counter the "recognized evils in our national economy". *U.S. v. Silk, supra,* at 712, 67 S.Ct. at 1467. This is a view recognized and accepted by our circuit.

*American Consulting Corp. v. United States,* 454 F.2d 473 (3rd Cir.1971).

With this overview of the law, we will proceed with a review of the twenty-four (24) factors heretofore mentioned against the facts present in this case.

Our conclusion is that thirteen (13) of the twenty-four (24) factors are specifically geared to determining the degree to which the Debtor retained control over her workers. Specifically, the following thirteen (13) factors were weighed in this fashion:

1. Instructions: Ms. Serino assigned nurses to specific households and facilities which thereafter controlled the relationship of nurse and patient. We view this factor as weighing against the employer-employee relationship.

2. Training: The Debtor did no training since the nurse or nurse's aide was presumably qualified by prior experience and/or education. Again, this militates against the employer-employee relationship.

3. Hiring, supervising and paying assistants: The evidence on the record suggested that Ms. Serino was no more than a matchmaker between nurse and patient with compensation to Ms. Serino as an override of salary. Although she handled the billing and the receipts, hiring and supervising were left to the patients or the facility supervising the patients. Again, this weighs in favor of independent contractor status.

4. Set hours of work: Hours of work were apparently set between patient and nurse without input from Ms. Serino. This, again, suggests independent contractor status.

5. Full time required: There was no indication on the record that Ms. Serino required any specific number of hours worked. She did indicate that if a nurse was unavailable to provide services to patients repeatedly, that nurse would no longer be called. Again, the employer-employee relationship is not indicated.

6. Doing work on employer's premises: None of the nurses' work occurred on or

2. "... [O]ne was an employer if he had the 'right' to direct what should be done and how it should be done". *Bartels v. Birmingham,* 332 U.S. 126, 129, 67 S.Ct. 1547, 1549.

about Ms. Serino's office. This, again, weighs in favor of independent contractor status.

7. Order or sequence (of task) set: Since Ms. Serino did not supervise the specific jobs, neither could she set the order in which those jobs were performed. Again, the record suggests only that Ms. Serino matched up nurses with patients who needed nurses. This factor weighs in favor of independent contractor status.

8. Oral or written reports: None were necessary and, therefore, independent contractor status is indicated.

9. Furnishing of tools and materials: A nurse's tools are her blood pressure meter apparatus (sphygmomanometer) and her uniform, typically the traditional white outfit, both items of which were supplied by the nurses and not Ms. Serino. Again, this would suggest independent contractor status.

10. Working for more than one firm at a time: Ms. Serino indicated that she was not concerned about nurses working for more than one patient at a time or through more than one agency at a time. She had no exclusivity relationship with the nurses on her registry. Again, this would suggest independent contractor status.

11. Making service available to the general public: Consistent with our discussion on whether full time was required, the nurses were allowed to offer their services to the general public and to other registry services during the same period that they were available for placement by Serino's Nurses Registry. Again, this suggests independent contractor status.

12. Right to discharge: Ms. Serino denied any responsibility or ability to fire the nurses that were placed in various institutions and homes. She indicated this was the responsibility of the facility or the patient. Again, she did indicate that if nurses did not respond to her request for placement, they would eventually be dropped from her registry list. That was not the equivalent of firing a nurse. The independent status of the nurse is again illustrated by this factor.

13. Right to terminate: The last factor we will look at in determining who had the right to control the worker is the question as to whether the worker could terminate her relationship with the registry at any time. With regard to this, the court has no evidence that a nurse could not have her name removed from the registry at any time. Nor, is there any evidence that a nurse terminating her position in a certain facility or with a certain patient would automatically suffer any consequences with regard to the registry.

Each and every one of these factors suggests that the right to control the work was almost entirely absent. Other than asking the nurse to report to a certain facility and handle the accounting for the services performed, Ms. Serino maintained absolutely no control over the individuals on her registry.

This, however, does not end our discussion since the right to control is not the controlling element nor the only element to consider. *American Consulting Corp. v. United States, supra.* Other factors may play a part in the ultimate decision. We view the bulk of the other factors in the twenty-four (24) factor list as being of an economic nature. Traditionally, independent contractors are willing to make the investment and risk the loss as well as benefit from the profit. An employee would be somewhat immune from these concerns. Among the factors that we consider are economic related are the following:

1. Payment by hour, week or month: The nurses, in this case, were paid on an hourly basis just as an hourly employee would be treated with Ms. Serino retaining an override. This would suggest employer-employee status.

2. Payment of business and/or travel expenses: Ms. Serino did not pay any travel or business expenses except in one isolated case where it was established that she may have paid the seminar fees in the amount of $30.00 for three workers. Even if this was a fact (denied by Ms. Serino) one isolated incident cannot allow the court to conclude that Ms. Serino paid the travel and expenses of the nurses on her registry. We weigh this factor in favor of independent contractor status.

3. Significant investment: The nurses who supplied services cannot be held to have made any significant investment in their trade apart from their education. Since we had no evidence of the extent of that expense, we view this factor as favoring employer-employee status.

4. Realization of profit or loss: This factor becomes a non-factor because the pay scale for the nurses was apparently regulated by the state association and the expenses involved in providing nursing services were apparently rather nominal. This factor is inconclusive.

5. Employee-type benefits provided: The only evidence of any employee-type benefit received by the nurses who registered with Serino's Nurses Registry was workmen's compensation insurance which was obtained for a period during 1988–1989 as a result of a requirement of some of the facilities to which Serino's Nurses Registry was offering services. Although the government is correct in concluding that this suggests employer-employee status, the fact that it only existed for one of the three (3) years for the tax in question, allows us to conclude that, overall, this factor would favor independent contractor status. We view the insurance as no more than an isolated expense not in the ordinary course of Ms. Serino's affairs.

While this concludes our analysis of the economic factors, there are other factors in the list of twenty-four (24) that must be reviewed which do not neatly fit within the right to control aspect nor the economic aspect of this decision. They are as follows:

1. Continuing relationship: While some nurses may have worked with Ms. Serino for significant periods of time, the record does not demonstrate any general long-term relationship between numbers of nurses and Ms. Serino. This factor can benefit neither government nor Debtor.

2. Intent of the parties—how they view the relationship: The testimony suggested that the nurses viewed their status as independent contractors and Ms. Serino apparently took a similar position. There is no suggestion that workers demanded workmen's compensation, unemployment compensation, or sick days. There was no evidence that regular checks were requested or any of the other attributes of an employer-employee relationship were sought or provided. We view this as favoring independent contractor status.

3. Written, signed independent contractor agreements: There were none suggesting that the relationship was an employer-employee one.

4. Integration: Nurses' jobs were fully integrated in Serino's Nurses Registry; that is to say, that without the nurses producing their services, Ms. Serino would suffer a complete loss of income. This would suggest employer-employee status.

5. Services rendered personally: The nurses utilized their own personal services and no one else. This also would suggest employer-employee status.

Our review of the various factors allows us to conclude that the right to control factors weigh heavily in favor of independent contractor status and the remaining economic and other factors we have considered are inconclusive in categorizing the relationship of the nurses to the Debtor. We view this development as heavily suggesting that we rely on the right to control factors as persuasive under these facts. We therefore conclude that the nurses working for Serino were independent contractors; that the Debtor is not responsible for the withholding taxes in question; that the Debtor's objection to the proof of claim should be sustained; and that the Debtor's plan should be confirmed.

The result we reach is supported by *Revenue Ruling 61–196, 1961–2 CB 155*. Also, reaching a similar decision on virtually identical facts is *Hospital Resource Personnel, Inc. v. United States*, 860 F.Supp. 1557 (S.D.Ga.1994).