Sylvia GOLDEN

v.

A.P. ORLEANS, INC.

Civ. A. No. 87–0264.

United States District Court,
E.D. Pennsylvania.

Feb. 29, 1988.

Arthur L. Gutkin, Conshohocken, Pa., for plaintiff.

Cary L. Flitter, Bala Cynwyd, Pa., for defendant.

## MEMORANDUM OF DECISION

GAWTHROP, District Judge.

### I. *Introduction*

Sylvia Golden initiated this suit against A.P. Orleans, Inc. ("Orleans"), under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* (1985 & Supp.1987), alleging that Orleans discriminated against her on the basis of her age in discharging her from employment on December 6, 1985. Presently before the Court is defendant's Motion for Summary Judgment in which defendant challenges plaintiff's status as an "employee" under the ADEA.[1] The material facts are not in dispute.

### II. *Background*

Orleans is a marketing arm of Orleans Builders and Developers, a local real estate developer engaged principally in the development of residential housing. Orleans initially hired Golden in December of 1983 to sell homes at its Valley Glen project in Elkins Park, Montgomery County, Pennsylvania. At that time, Golden was a licensed Pennsylvania real estate sales agent. Later, in the summer of 1985, Golden obtained her real estate broker's license.

The relationship between the parties was governed by a formal "Pennsylvania Independent Contractor Agreement", which, by its terms, provided that either party could terminate the relationship upon written notice to the other with or without cause. Regarding the relationship between the parties, the contract provided:

> It is understood that the sales representative is an independent contractor and not an employee of A.P. Orleans, Inc. and A.P. Orleans, Inc. does not assume any responsibility for actions of the sales representative outside the scope of authority granted in this agreement.

1. Plaintiff has moved to strike defendant's reply brief on the theory that Fed.R.Civ.P. 7 precludes the filing of a reply brief in motion practice except upon approval of the court. The requirement of court approval for a reply in Rule 7 applies only, however, to replies filed in response to the answer at the pleading stage. Rule 7 does not require court approval or permission with respect to the filing of a reply in motion practice. Plaintiff's motion to strike defendant's reply brief will be denied.

. . . .

This agreement shall not be construed to constitute the sales representative a partner, employee or agent of A.P. Orleans, Inc., and neither party to this agreement has any authority to bind the other in any respect. It is intended by the parties that each remain an independent contractor responsible for its own actions.

Pennsylvania Independent Contractor Agreement, at 4–5. Golden did not receive paid vacation or retirement benefits at Orleans. She was paid a draw of $400 a week against commissions, and received additional compensation for special sales incentives that the company set up on various occasions. Orleans reported the commissions to the Internal Revenue Service on Form 1099–NEC, Statement for Recipients of Non–Employee Compensation, and did not withhold income tax or pay social security tax for Golden.

Golden worked under the supervision of an area sales manager, and was required to attend weekly sales meetings. In addition, Golden was required to submit weekly activity reports both by phone and in writing. Memoranda were sent on a periodic basis to the sales personnel communicating company directives regarding daily work activity. Golden's work schedule was set by Orleans and she was required to be at the office during those hours. In short, Golden's day-to-day work activity was regulated directly by the management of the company.

Under the agreement, Golden was required to sell exclusively for Orleans. It appears that the company maintained an organized sales force and, in fact, management at one point suggested that the salespersons wear a company uniform. Orleans supplied Golden with the necessary materials to perform her work and provided the workplace as well. Orleans concedes that sales was and is an integral part of the business of the company.

In November of 1985, Golden was terminated as part of a plan to restructure the sales effort at Valley Glen. She was replaced by a person in his twenties. A second sales representative over the age of forty was terminated as well, and replaced by a person under the age of forty.

## III. *Discussion*

The test for determining employee status under the ADEA has been clearly articulated by the United States Court of Appeals for the Third Circuit. *See Equal Employment Opportunity Commission v. Zippo Manufacturing Co.*, 713 F.2d 32 (3d Cir.1983). To say that the test is clear, however, belies its conduciveness to easy application. The *Zippo* court adopted a test that has come to be known as the "hybrid" standard for determining employee status—that is, the test combines the common law "right to control" test with the "economic realities" standard adopted by the Supreme Court in determining employee status under the new deal legislation. *See id.* at 35–38; *Wheeler v. Hurdman*, 825 F.2d 257, 268–71 and n. 24 (10th Cir.1987). The common law "right to control" standard focuses on the employer's right to determine the manner in which the work is to be done. *United States v. Silk*, 331 U.S. 704, 714 n. 8, 67 S.Ct. 1463, 1468 n. 8, 91 L.Ed. 1757 (1947). The "economic realities" standard focuses on the degree of economic dependence of the alleged employee on the business with which he or she is connected. *See Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947). The result of the combination of these two standards is a twelve-factor "totality of the circumstances" test, the most important factor among the various factors being the employer's right to control the means and manner of the worker's performance. *Zippo*, 713 F.2d at 37. The other factors include:

(1) The kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; 2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job;

(6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties.

*Id.* (quoting *Spirides v. Reinhardt,* 613 F.2d 826, 832 (D.C.Cir.1979). Since there is essentially no dispute as to the historical facts, disposition by summary judgment is appropriate here. *See Little v. MGIC Indemnity Corp.,* 836 F.2d 789, 792 (3d Cir. 1987); *Zippo,* 713 F.2d at 35 [2] I will address each of the twelve factors set forth by the *Zippo* court.

### A. The Employer's Right To Control

The *Zippo* court made it clear that "the employer's right to control the means and manner of the worker's performance is the most important factor among the various factors that a court must consider under [the] hybrid standard." *Zippo,* 713 F.2d at 37 (quoting *Spirides v. Reinhardt,* 613 F.2d 826, 831 (D.C.Cir.1979)). In *Zippo,* which involved sales representatives referred to as "district managers" of the Zippo Company who were engaged by Zippo to sell its products, the court held that the claimants were not employees, stating:

Zippo exercised virtually no control over the means and manner of appellants' sales practices. Although the district court found that Zippo kept track of appellants' sales, it correctly concluded that this monitoring did not amount to supervision over appellants' work performance. Indeed, appellants had the independence to establish their own business organizations, hire employees and contact any customers within their territo-

ries. They were not required to account to Zippo for their daily activities.

*Id.* at 38. Here, in contrast to *Zippo,* Orleans exercised an abundance of control over the daily work activities of Golden. Her work hours were set by the company and she received memoranda periodically which contained specific performance procedures mandated by the company. She was supervised by an area sales manager, and was required to attend weekly sales meetings and seminars. In addition, Golden was required to submit reports on her daily activities both in writing and by phone. The manner in which the sales transactions were to be conducted was strictly regulated by the management. In short, Golden exercised very little if any independence in her daily work activity. This lack of independence weighs strongly in favor of plaintiff's assertion of employee status under the ADEA. *Zippo,* 713 F.2d at 37.

### B. The Nature of The Work

Three of the twelve factors set forth by the *Zippo* court focus on the nature of the work performed by the alleged employee. First, with respect to whether the type of work is generally performed by the alleged employee. First, with respect to whether the type of work is generally performed at the direction of a supervisor or done by a "specialist" without supervision, it appears that the function of sales can be, and often is, a highly supervised activity. The function of real estate sales, while not without complications, is not the type of specialized activity commonly divorced by its very nature from management. In fact, management is most often involved in the marketing of a company's product, in contrast to the Zippo marketing structure where the company truly limited its management and supervision to the production area.

---

**2.** The plaintiff contends that disposition by summary judgment is inappropriate here because the ultimate question whether Golden was an employee or an independent contractor is in dispute. While it is true that this question is hotly debated, the debate does not preclude disposition by summary judgment. The ultimate question whether plaintiff is to be considered an employee for ADEA purposes is a question of law, and should be determined on summary judgment where the essential historical facts are not in dispute. *See Zippo,* 713 F.2d at 35 (discussing propriety of disposition by summary judgment in circumstance where ultimate question of status is debated despite agreement on historical fact).

As for the skill required to perform the job, the premise appears to be that an employer is more likely to engage an independent contractor where a great amount of skill is required. Setting aside the questionable nature of this premise, the real focus under this factor seems to be whether the job requires a skill that is not commonly found in the normal employee pool. Here, while real estate sales requires a great amount of skill and experience, it certainly is not the type of skill that would commonly be lacking in a real estate sales company's pool of employees. Thus, it is not the kind of work that would require the aid of an independent contractor.

Finally, with respect to whether the work was an integral part of the company's business, the premise appears to be that a company is less likely to rely on the performance of independent contractors for its core functions. Surely, real estate sales must be considered an integral part of the operation of a real estate sales company. Orleans concedes this fact. Therefore, even assuming that real estate sales is an occupation that requires great skill and specialization, it is not likely that a real estate sales company would find it necessary to seek outside help in performing the function. Thus, the relevance of skill and specialization are diminished where the work performed is at the core of the company's undertaking.

### C. The Intention of the Parties

Orleans argues that the intention of the parties should carry great weight here because Golden knowingly signed an independent contractor's agreement and, in fact, referred to herself in the pleadings and at deposition as an independent contractor. In support of this argument, Orleans relies on a decision by the Second Circuit Court of Appeals in which the court refused to disregard the corporate form adopted by the parties in favor of a holding that an employee of the corporation was in reality one of several partners. *Hyland v. New Haven Radiology Associates, P.C.,* 794 F.2d 793 (2nd Cir.1986). Instead, the court reasoned that the parties' decision to form a corporation to employ themselves was

entitled to deference. The court concluded, over a strong dissent, that the plaintiff was an employee despite the fact that he exercised control over the corporation as an officer and shareholder.

The *Hyland* decision can certainly be read to suggest that form should be favored over substance in some circumstances. If that be so, however, this is not such a case. There is considerable authority for the proposition that the parties' view of the relationship is not controlling where the label employed by the parties cannot withstand reasoned scrutiny. *See Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 982 (4th Cir.1983) (distinguishing status that is merely the creation of a formal document from status actually recognized in the working relationship); *Unger v. Consolidated Foods Corp.,* 657 F.2d 909, 915 n. 8 (7th Cir.1981) (noting that relationship identified in contract is not controlling where other factors suggest that language of contract is inaccurate); *Spirides v. Reinhardt,* 613 F.2d 826, 832 (D.C.Cir.1979) (same). While I recognize that the parties' agreement called for an independent contractor relationship, I do not find this factor to be controlling.

### D. Other Customary Employment Practices

The remaining factors under *Zippo* focus on whether certain customs commonly associated with the employment relationship were practiced by the parties. With respect to the payment of vacation and retirement benefits, it appears that Golden received no such benefits. In addition, Orleans treated her as an independent contractor for tax purposes. Finally, the manner of termination—without notice—is consistent with independent contractor status. It should be noted, however, that these practices benefited Orleans and that termination without explanation is perfectly consistent with the notion of employment at will. The relevance of these factors is diminished by the control exerted by Orleans over Golden's daily activities. Apparently, to the extent Golden's independent contractor status existed, it existed for the benefit of Orleans alone.

Orleans provided the work equipment as well as the place of work. The length of her tenure, two years, is consistent with employee status. While she was paid on a commission basis, she was given a weekly draw against the commissions. The manner of payment was thus consistent with Golden's complete dependence upon Orleans for her livelihood.

## IV. *Conclusion*

The hybrid test for determining employee status under the ADEA was not intended to be applied in a mathematical fashion. All of the factors are to be considered in light of the ultimate objective to capture the essence of the relationship at issue. The *Hickey* court noted:

> Of course, as a practical matter the test cannot be rigidly applied. It is impossible to assign to each of these factors a specific and invariably applied weight. Moreover, it is not necessary that evidence exist with respect to each of these factors in order to determine the existence, *vel non,* of an employment relationship. For instance, evidence on two of these points could be so overwhelming that evidence on the other simply could not overcome their weight.

*Hickey v. Arkla Industries, Inc.,* 699 F.2d 748, 752 (5th Cir.1983). Here, the evidence reveals that Orleans exerted a high degree of control over the daily activities of the plaintiff. While Orleans treated Golden as an independent contractor for some purposes, it did so only where such treatment served its own purposes. Orleans was apparently unwilling to allow its sales staff to operate independently, probably because sales was such an integral part of the company's business. Golden was tied to Orleans under a contract that required her exclusive allegiance, and this arrangement resulted in her absolute dependence upon Orleans for her livelihood. In light of all the factors discussed above, I hold as a matter of law that the plaintiff was at all relevant times an employee of the defendant. Defendant's Motion for Summary Judgment will be denied. An appropriate Order follows.