**Mary Lou STETKA, Plaintiff,**

v.

**HUNT REAL ESTATE CORPORATION, Defendant.**

**No. 91–CV–586A.**

United States District Court, W.D. New York.

July 29, 1994.

Marcus, Knoer & Crawford, Buffalo, NY, for plaintiff (David P. Marcus, of counsel).

Borins, Halpern & Stromberg, Buffalo, NY, for Defendant (Harold M. Halpern, of counsel).

### DECISION AND ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned by the Hon. Richard J. Arcara on March 17, 1992 for report and recommenda-tion on dispositive motions. On May 22, 1992, the parties filed a consent to proceed before the undersigned on dispositive motions. This matter is presently before the court on Defendant's motion for summary judgment, dated December 16, 1992.

### BACKGROUND

Plaintiff, Mary Lou Stetka, initially filed a *pro se* action on September 3, 1991 raising a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for sex discrimination. Upon retaining counsel, an amended complaint was filed by Plaintiff on March 12, 1992, asserting claims under Title VII, and the New York State Human Rights Law, Executive Law § 296, alleging that she was discriminated against and subjected to harassment because of her sex. Defendant, a New York State corporation, filed its answer to the amended complaint on April 10, 1992.

On December 16, 1992, Defendant filed a motion for summary judgment, or, alternatively, for dismissal of the pendent New York State claim, and to strike claims for punitive and compensatory damages, and to strike the jury demand. Plaintiff responded to Defendant's motion on February 12, 1993. Defendant submitted a reply to Plaintiff's response on February 23, 1993.

Oral argument on the motion was heard on February 25, 1993. A supplemental memorandum of law was thereafter filed by Defendant on March 19, 1993. Plaintiff responded by letter on March 25, 1993.

For the reasons as set forth below, Defendant's motion for summary judgment is GRANTED. Defendant's motion to dismiss the pendent state claim for a violation of the New York State Human Rights Law is also GRANTED. Defendant's alternative motions to strike Plaintiff's demand for a jury trial and for compensatory damages, and to strike Plaintiff's demand for punitive damages are deemed moot.

### FACTS

In the fall of 1987, Plaintiff, a substitute teacher in the Orchard Park, New York school system, decided to become a real es-

tate agent. (S. 6–7).[1] Plaintiff went to the Hunt Real Estate office in Orchard Park, asking to speak with the manager, and spoke with Janice Finaldi regarding a real estate career. (S. 10–11). Thereafter, Plaintiff took a real estate licensing course in the fall of 1987, and then attended Hunt's six-week training program in February, 1988. (S. 11–12). Plaintiff began working in the Hunt Real Estate Orchard Park office as a licensed real estate agent in late February, 1988. (S. 12).

In September, 1988, an individual named Eric Bowen became associated with the Orchard Park Hunt Real Estate office as a real estate agent. (S. 49–50). Bowen then became the Director of Developmental Services with Hunt, a salaried position, which involved developing business for Hunt with builders and developers in the Western New York area. (S. 60–61); (H. 16)[2]. Bowen also continued working as an independent sales agent. (S. 61–62).

In the spring of 1989, Bowen told Plaintiff about some condominiums that he was listing in Chautauqua, and asked Plaintiff if she wanted to see them. (S. 51). As Plaintiff had a client who was interested in a vacation home, Plaintiff agreed to look at the condominiums. (S. 51–52). Plaintiff and Bowen drove to Chautauqua in the late afternoon, an approximate one hour drive from Orchard Park, and toured the various condominiums. (S. 56–57). After stopping for dinner, they drove back to the office in Orchard Park. (S. 58–60). During the drive, Bowen joked in a sexual manner about his preference to engage in wild sex with multiple partners, a conversation Plaintiff did not respond to. (S. 58–59).

Following the trip to Chautauqua, Plaintiff stated that she began to see Bowen frequently at the office, and that he continually asked her to go out with him. (S. 70). Bowen also asked her to spend a weekend in Chautauqua, an invitation Plaintiff declined. (S. 70). Bowen repeatedly asked to go out with Plaintiff throughout the summer and fall of 1989, (S. 70–71), but Plaintiff did not accept as she believed that Bowen had a serious girlfriend. (S. 72). During that time, Bowen did not refer any developmental services business to Plaintiff. (S. 73).

In early December, 1989, Plaintiff agreed to go to out to dinner with Bowen. (S. 73, 75). Plaintiff met Bowen at the restaurant of the Holiday Inn in Hamburg, New York on a Wednesday evening. (S. 76). Shortly after arriving at the restaurant, Bowen told Plaintiff that he had forgotten his wallet, and asked Plaintiff to accompany him back to his home so that he could pick up the wallet. (S. 77–78). Plaintiff went to Bowen's home, where Bowen poured a glass of wine for each of them. (S. 83). Plaintiff and Bowen sat by a fire and talked about both personal and business items. (S. 83). Plaintiff stayed at Bowen's home for a couple of hours, during which the conversation between them became very strained. (S. 87–88). According to Plaintiff, Bowen asked her to view videotapes of a sexual nature, and requested that she have sexual relations with him and another woman. *See* Amended Complaint, at p. 4, ¶ 21. Plaintiff further stated that Bowen attempted to intimidate her into consenting to the sexual conduct, but she refused, at which point Bowen drove Plaintiff back to her car at the Holiday Inn. *See* Amended Complaint, at p. 4, ¶ 22.

Thereafter, Plaintiff claims she received information in the form of an anonymous telephone call regarding Bowen's "abusive" and "manipulative" nature towards women, and that he had behaved in similar fashion to other women sales agents at Hunt. (S. 94). Following this conversation, Plaintiff telephoned Bowen's girlfriend to "find out about Eric." (S. 99).

According to Plaintiff, following these experiences with Bowen, she did not receive new development listings because of Bowen's position as the Director of Developmental Services. (S. 106–107). Plaintiff eventually spoke to Peter Hunt, the president of Hunt Real Estate, in June, 1990, regarding the

---

**1.** S. references are to the page number of the transcript of the deposition of Mary Lou Stetka, dated June 23, 1992.

**2.** H. references are to the page number of the transcript of the deposition of Peter F. Hunt, dated November 5, 1992.

situation. (S. 108). Peter Hunt then spoke to Bowen who denied Plaintiff's allegations, stating only that he had gone out with Plaintiff, but that he now had a more serious girlfriend. (S. 117). Plaintiff contacted Peter Hunt again approximately one week later to determine whether an in-house investigation of Bowen had been conducted, (S. 118), whereupon Peter Hunt informed Plaintiff that his conversations with Bowen and another female agent, whom Plaintiff had stated was also exploited by Bowen, did not result in any substantiation of the allegations, and that no further action would be taken. (S. 118). Plaintiff attempted to contact other female sales agents at Hunt regarding inappropriate behavior by Bowen, but was unable to obtain any direct evidence. (S. 123). Plaintiff filed a complaint with the Equal Employment Opportunity Commission in August, 1990. (S. 129).

Plaintiff left Hunt Real Estate in February, 1991, and obtained employment at Potter Realtors in Orchard Park. (S. 126). Plaintiff thereafter relocated to Virginia. (S. 133).

Hunt Real Estate had a standard Independent Contractor Agreement for its salespersons. (S. 16). Plaintiff was presented with the independent contractor agreement, but did not recall whether or not she had signed it. (S. 16–17). Plaintiff thereafter signed such an agreement on December 13, 1988. *See* Exhibit A to Defendant's Motion for Summary Judgment. Plaintiff, along with the other salespersons, was asked to work "floor time" in the real estate office twice a week for a two hour period answering telephones and taking prospect calls which came into the office during that time. (S. 47); (H. 95–96). The manager of the office scheduled the floor time each week, and any changes to the schedule were required to be made between the sales associates. *See* Exhibit C to Plaintiff's Affidavit, dated February 12, 1993. Plaintiff also attended sales meetings on Tuesday mornings, along with company-wide quarterly meetings. (S. 43–44); (H. 93). Other than the "floor time" hours, Plaintiff was not given a schedule of working hours or days by Hunt, but was permitted to work out of her home. *See* Plaintiff's Affidavit, at p. 4,

¶ 15; (S. 40); Defendant's Exhibit A, Agreement, at ¶ 3, 4.

Plaintiff was not paid a salary or draw, but only paid a commission for each real estate sale which she closed. *See* Defendant's Exhibit A, at ¶ 2; (S. 15). The payments to Plaintiff from Hunt were for the gross amount of the commission, and did not make any deductions for federal or state taxes. (S. 48). Plaintiff received a Form 1099 indicating the gross amount of commissions earned from Hunt for the years 1988, 1989, and 1990 for tax purposes, *see* Exhibits 1, 2, and 3, Defendant's Notice of Motion, dated December 16, 1992. Additionally, Plaintiff was required to pay her own license fee to the State of New York, to pay her own fee to belong to the real estate multiple listing service, and to pay all of her own business expenses, which Plaintiff then deducted from her gross commissions when filing her yearly income tax returns. (S. 39–40); Exhibits 4, 5, and 6, Defendant's Notice of Motion. Hunt, however, provided Plaintiff with the use of a computer, telephones, microfiche, office supplies, and use of a desk at the Orchard Park Hunt Real Estate office. *See* Plaintiff's Affidavit, at p. 9, ¶ 31; Defendant's Exhibit A, at ¶ 6. Hunt also provided training classes for its agents, such as financing classes, which agents were encouraged to attend. (H. 92). Hunt also provided all sales agents scripts for their use in speaking with potential clients. (H. 94). Evaluations of each sales agent were made by the manager of the Hunt office. (H. 91). Further, under Hunt policy, no sales agent was allowed to work for another real estate broker while they were working for Hunt. (H. 107–108).

### DISCUSSION

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The party mov-

ing for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra,* at 331, 106 S.Ct. at 2556.

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra,* at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra,* at 255, 106 S.Ct. at 2513; *Rattner, supra,* at 209.

In this case, Defendant moves for summary judgment on the ground that there is no genuine issue of material fact as to Plaintiff's employment status, and the fact that Plaintiff was associated with Defendant as an independent contractor precludes any recovery under either Title VII or the New York State Human Rights Law. Plaintiff contends that, for purposes of the employment discrimination laws, Plaintiff had an employment relationship with Defendant.

### 1. *Title VII Claim*

 Under Title VII of the Civil Rights Act of 1964, "it shall be an unlawful employment practice for an employer to ... discharge any individual, or otherwise to discriminate against any individual ... because of such individual's sex...." 42 U.S.C. § 2000e–2(a)(1). Under Title VII, sexual harassment may constitute illegal sex discrimination. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Sexual harassment may refer to demands for sexual favors either in return for employment benefits or under a threat of adverse employment action. *Meritor Savings Bank, supra,* at 67, 106 S.Ct. at 2405; *Karibian v. Columbia University,* 14 F.3d 773, 777 (2d Cir.1994). The New York State Human Rights law also prohibits an employer from discriminating against an employee based on the employee's sex. N.Y.Human Rights Law, Executive Law § 296.

 In order to prevail on a Title VII or New York Human Rights law claim, a plaintiff must prove the existence of an employment relationship. *Matthews v. New York Life Insurance Co.,* 780 F.Supp. 1019, 1024 (S.D.N.Y.1992). Title VII protects workers who are "employees," but does not protect "independent contractors." *Matthews, supra,* at 1024; *Spirides v. Reinhardt,* 613 F.2d 826, 829–30 (D.C.Cir.1979). Independent contractors are not considered employees under common law and have traditionally been precluded from obtaining relief under Title VII. *Krijn v. Simone,* 752 F.Supp. 102, 104 (S.D.N.Y.1990), *aff'd without opinion,* 930 F.2d 910 (2d Cir.1991). The determination of whether a plaintiff is an employee or an independent contractor is a question of law, while the existence and degree of the legal factors to be considered in this determination are questions of fact. *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1059 (2d Cir.1988).

 Prior to the Supreme Court's ruling in *Nationwide Mutual Insurance Co. v. Darden,* —— U.S. ——, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), courts applied one of three different tests in determining whether an individual was an employee for purposes of the employment discrimination laws. The first test was based on the common law of agency which will be discussed in more detail below. *Frankel v. Bally, Inc.,* 987 F.2d 86, 89 (2nd Cir.1993). The second test was called an "economic realities" test which considered individuals to be employees if "as a matter of economic reality, [they were] dependent upon the business to which they render[ed] service." *Bartels v. Birmingham,* 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947). The third test, called a "hybrid" test, combined both the economic realities test and the common law agency test. *Frankel, supra,* at 89–90.

In *Krijn v. Pogue Simone Real Estate Co., supra,* a real estate agent brought a Title VII action alleging that she was discharged on the basis of her sex and national origin. In dismissing the plaintiff's action on the ground that she was an independent contrac-

tor, the court held that the defendant broker retained minimal control over the plaintiff, an independent real estate agent. *Krijn, supra,* at 104. The defendant required attendance at weekly sales meetings, and periodic attendance in its offices, and provided real estate guides, listings, and office space in which the plaintiff could conduct her business. *Krijn, supra,* at 104. The plaintiff was paid on a commission basis, and the defendant did not control the plaintiff's day-to-day hours or details of the plaintiff's real estate work. Using the "hybrid" test to determine whether the plaintiff was an independent contractor or an employee, the court held, however, that these practices did not "constitute sufficient control over the 'details' and 'means' by which the work [was] to be performed as to equal the control that an employer asserts over its employees." *Krijn, supra,* at 104 (citing *In re Wilson Sullivan Co.,* 289 N.Y. 110, 44 N.E.2d 387 (1942) (licensed real estate salesperson is an independent contractor and not an employee under New York law)).

In 1992, the Supreme Court held that "where a statute containing the term 'employee' does not helpfully define it, the common law agency test should be applied." *Darden, supra,* at ——, 112 S.Ct. at 1348. Neither the ADEA nor Title VII contain a definitive definition of the word "employee."

In *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), the Supreme Court set forth certain factors to be considered in determining whether a hired party is an employee under the general common law of agency. *Reid, supra,* at 751, 109 S.Ct. at 2178. The Court held that relevant factors to this inquiry included the skill required, the source of the instrumentalities and tools, the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment, the hired party's role in hiring and paying assistants, whether the work is part of the regular business of the hiring party, whether the hiring party is in business, the provision of employee benefits, and the tax treatment of the hired party. *Reid, supra,* at 751–52, 109 S.Ct. at 2179. Further, "since the common-law test contains 'no shorthand formula or magic phrases that can be applied to find the answer ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.' " *Darden, supra,* —— U.S. at ——, 112 S.Ct. at 1349 (citing *NLRB v. United Insurance Co. of America,* 390 U.S. 254, 258, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968)).

Following *Darden,* in *Frankel v. Bally, Inc.,* 987 F.2d 86 (2d Cir.1993), the Second Circuit held that "the question of whether an individual is an 'employee' or an 'independent contractor' ... must be determined in accordance with common law agency principles." *Frankel, supra,* at 90. In that case, an Age Discrimination in Employment ("ADEA") action, the plaintiff, a shoe sales representative, sued the shoe company which he represented for age discrimination upon his termination. The defendant claimed that the plaintiff was an independent contractor, and, therefore, could not raise a claim against it for age discrimination. The court, citing the guidelines set forth by the Supreme Court in *Darden, supra,* held that the common law agency test should be applied in making a determination as to the plaintiff's employment status, and remanded the action to the district court for such a determination based on the common law agency principles outlined in *Reid. Frankel, supra,* at 91. The court noted that, in practice, there was "little discernible difference" between the hybrid test, such as that used in *Krijn,* and the common law agency test, and that, in appropriate circumstances, factors relating to an individual's economic dependence upon the hiring party may be taken into account under the common law agency test. *Frankel, supra,* at 90.

Plaintiff argues that the court in *Frankel* reaffirmed that a determination of whether a plaintiff is an independent contractor or an employee must be conducted on a case-by-case basis, and that Plaintiff has provided substantial affidavits and documents putting forth evidence that Hunt had control over Plaintiff in the manner in which she per-

formed her duties. While the court agrees that an analysis of the individual circumstances of each case must be made, the court notes that the *Krijn* court, in determining that the plaintiff was an independent contractor, applied the "hybrid" test. As the *Frankel* court stated that there is little difference between the "hybrid" test and the common law agency test which is the law of the Second Circuit, the *Krijn* court analysis is relevant to the instant case. Indeed, the facts in *Krijn* are almost indistinguishable from this case.

In this case, Plaintiff obtained her New York State real estate salespersons' license, and began her association with Hunt in February, 1988. Plaintiff was assigned to Hunt's Orchard Park office, and immediately began selling real estate. In fact, Plaintiff was named a rookie of the year in 1988 based on her performance. Plaintiff was required to serve "floor time," *i.e.,* answering telephones and talking to new prospects, for two hours twice a week, and was also required to attend weekly sales meetings and house tours. Plaintiff was supplied with a desk and office supplies at the Hunt office. However, Plaintiff scheduled her own hours, marketed her own listings, and was expected to develop her own business leads. Plaintiff was paid on a commission basis, and did not receive any commission until the property was sold. No taxes were deducted from Plaintiffs' gross commission payment, nor was Plaintiff covered by either Workers' Compensation or New York State unemployment insurance. Plaintiff received a Form 1099 at the end of the year indicating the gross amount of commissions earned at Hunt Real Estate which was used to complete her federal and state income tax returns, including the payment of any self-employment social security tax. Plaintiff also paid for her own licensing fees with New York State, and paid her own fee to obtain multiple listing services.

The court finds that, under the common law agency test as set forth in *Darden, Reid,* and *Frankel,* Plaintiff is an independent contractor, and therefore, may not bring an action against Defendant under Title VII or the New York Human Rights Law. Despite the fact that she was given office space, that she was scheduled for floor time by the Hunt

manager, and the requirement that Plaintiff attend sales meetings and spend two to four hours a week in the Hunt office, Plaintiff's time was generally unstructured. Plaintiff set up her own meetings, brought in her own business, developed her own leads, and marketed herself as an independent agent. Defendant did not exercise day-to-day control over Plaintiff such as an employer would exercise over an employee. Rather, Plaintiff only appeared at the Hunt office on her own schedule. An analysis of the facts in this case leads to the conclusion that Plaintiff's position with Hunt Real Estate was that of an independent contractor.

Plaintiff cites other cases in an effort to show that Plaintiff had an employment relationship with Hunt. However, these cases are distinguishable. In *Clancey v. American Management Association,* 781 F.Supp. 286 (S.D.N.Y.1992), the court held that a fact question as to whether a sales representative was an employee or an independent contractor precluded summary judgment. However, in that case, the court applied the "economic realities" test, which emphasizes that, as a matter of economic reality, a plaintiff is dependent upon the business to which they render service. This standard, which provides a more broad-based definition of an employee, is no longer viable after *Frankel.* In *Golden v. A.P. Orleans,* 681 F.Supp. 1100 (E.D.Pa.1988), the court found a real estate broker to be an employee for purposes of the Age Discrimination in Employment Act. However, in that case, the court applied the "hybrid" test, defined in the Third Circuit as combining a common law "right to control" test with the "economic realities" standard. *Golden, supra,* at 1101. The right to control test focused on the employer's right to determine the manner in which the plaintiff's work was to be done. *Golden, supra,* at 1101. This hybrid test adopted by the Third Circuit, however, was also found to have been "abandoned in favor of common law agency principles." *See Stouch v. Brothers of the Order of Hermits of St. Augustine,* 836 F.Supp. 1134, 1139 (E.D.Pa.1993). Even if the "hybrid" test had not been abandoned, the facts of the *Golden* case are distinguishable. In *Golden,* the plaintiff's work hours were scheduled by the defendant, the plaintiff was required to submit reports on daily

activities, the manner of transactions were strictly regulated by the management, and, finally, the plaintiff was given a weekly draw against commission. *Golden, supra,* at 1102. These facts are not present in the instant case where Plaintiff worked her own hours, on a strict commission basis, with no draws or advances. In the instant case, Plaintiff did not have an employment relationship with Defendant, and the law is clear that, absent that relationship, no action for employment discrimination under Title VII or the New York State Human Rights Law can be brought.

In this case, Plaintiff worked autonomously, with minimal requirements to be present in the Hunt Real Estate offices. The factors in this case establish that, similar to the plaintiff in *Krijn,* Plaintiff did not have an employment relationship with Hunt, but, as a licensed real estate salesperson, worked as an independent contractor with Hunt.

As Title VII and the New York State Human Rights Law do not permit actions to be raised by independent contractors, this determination precludes any inquiry into the actions of Eric Bowen. If such harassment could be proved, it is indeed unfortunate that Plaintiff has no recourse based on the employment discrimination laws. However, until such time as Congress sees fit to expand the scope of the federal discrimination laws, this court is bound to apply the relevant law in this case. Accordingly, Defendant's motion for summary judgment is GRANTED.

### 2. *Pendent State Claims*

■ Defendant has also moved for dismissal of the pendent state claim on the basis that no subject matter jurisdiction exists over the pendent state claim.

■ Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court shall also have supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction of the court, that they form part of the same case or controversy under the Constitution. The district court must exercise supplemental jurisdiction if the requirements of § 1367(a) are met, unless one of the exceptions set forth in § 1367(c) exist. *Wilson v.*

*Roberson,* 1993 WL 119695 at *2 (S.D.N.Y. 1993). Under § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it had original jurisdiction. The Second Circuit has held that "absent exceptional circumstances," where federal claims are disposed of on summary judgment grounds, courts should "abstain from exercising pendent jurisdiction." *Drexel Burnham Lambert v. Saxony Heights Realty,* 777 F.Supp. 228, 240 (S.D.N.Y.1991) (quoting *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). "Factors to be considered by the court include (1) the length of time the matter has been pending before the federal court; (2) the proximity of the trial date; and (3) the predominance of issues of federal, as opposed to local, concern." *Drexel Burnham Lambert, supra,* at 240. "In the usual case in which all federal law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state law claims." *Morse v. University of Vermont,* 973 F.2d 122, 127–128 (2d Cir.1992).

In this case, the pendent state claim arose from the same set of facts as did the original federal claim. Accordingly, it was properly joined pursuant to 28 U.S.C. § 1367(a). However, once the federal claim was dismissed, under § 1367(c)(3), the remaining state claim becomes subject to dismissal as the court may, in its discretion, decline supplemental jurisdiction over this claim. While the complaint in this case was filed in 1991, a trial date has not yet been set, and the remaining issues are solely based on state discrimination law. Accordingly, based on relevant law, the court declines to exercise subject matter jurisdiction over the state claim. *See Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) (when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Baylis v. Marriott Corp.,* 843 F.2d 658, 664–65 (2d Cir.1988) ("the basis for retaining

jurisdiction is weak when ... the federal claims are dismissed before trial"); *Porras v. Montefiore Medical Center,* 742 F.Supp. 120, 127 (S.D.N.Y.1990) (court dismissed pendent state claims based on state employment discrimination law and common law assault where Title VII claims was dismissed on summary judgment prior to trial).[3]

Further, as summary judgment has been granted, Defendant's alternative motions are moot.

## CONCLUSION

Based on the foregoing discussion, Defendant's motion for summary judgment is GRANTED. Defendant's motion to dismiss the pendent state claim is also GRANTED. Defendant's alternative motions are, therefore, moot.

SO ORDERED.

---

**3.** While the plaintiff in *Porras v. Montefiore Medical Center, supra,* filed a claim in state court raising her state pendent claims, her claim for sex discrimination under the New York State Human Rights Law was dismissed where the court held that the plaintiff was collaterally estopped from pursuing sex discrimination and sexual harassment claims where the claims were decided in federal court after the plaintiff had a full and fair opportunity to litigate them. *See Porras v. Montefiore Medical Center,* 185 A.D.2d 784, 588 N.Y.S.2d 135, 137 (App.Div. 1st Dep't. 1992).