**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

URVASHI B. PATEL, an Individual,
Plaintiff-Appellant,

v.

SCOTLAND MEMORIAL HOSPITAL, a

No. 95-2704

North Carolina Corporation;
W. HARLEY DAVIDSON; GREGORY C.
WOOD,
Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of North Carolina, at Rockingham.
William L. Osteen, Sr., District Judge.
(CA-94-284-3)

Argued: April 3, 1996

Decided: July 10, 1996

Before WIDENER, MURNAGHAN, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Clifford Neil Ribner, Tulsa, Oklahoma, for Appellant.
Peter J. Covington, SMITH, HELMS, MULLISS & MOORE, L.L.P.,
for Appellees. **ON BRIEF:** Denise S. Cline, MOORE &
VAN ALLEN, Raleigh, North Carolina, for Appellant. James H.

Guterman, Maurice O. Green, SMITH, HELMS, MULLISS & MOORE, L.L.P.; George C. Covington, KENNEDY, COVINGTON, LOBDELL & HICKMAN, L.L.P., Charlotte, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Urvashi B. Patel, plaintiff-appellant, filed a lawsuit against Scotland Memorial Hospital ("SMH"), Harley Davidson, SMH's Chief of Staff during most of the time the events at issue occurred, and Gregory Wood, who was promoted to be SMH's Chief Administrator during the relevant time period, (collectively "the defendants"), alleging a violation of the Sherman Antitrust Act § 1, 15 U.S.C. § 1 (1988). Additionally, she raised numerous state law claims--namely, a violation of North Carolina's antitrust laws, tortious interference with contractual relations, intentional infliction of severe emotional distress, and breach of contract. The district court dismissed four of the five claims for failure to state a claim upon which relief could be granted and subsequently dismissed the remaining claim for lack of subject matter jurisdiction. Patel appeals the district court's dismissal of her claims as well as its refusal to allow her to amend her complaint a second time. Federal jurisdiction is based both on federal question jurisdiction, 28 U.S.C. § 1331 (1988), and diversity-of-citizenship jurisdiction, 28 U.S.C. § 1332 (1988). For the following reasons, we affirm.

I.

In 1988, Patel entered into the first of a series of contracts with SMH. Under her contract, she agreed to serve as the Medical Director of the Department of Anesthesiology at SMH, to provide 24-hour

2

anesthesiology services to SMH, and to direct SMH's certified registered nurse anesthetists ("CRNAs"). In return, SMH agreed not to enter into any other similar contracts.[1] With the help of CRNAs, Patel was able to supervise anesthesiology services in multiple operations simultaneously and to build a lucrative practice, earning as much as $750,000 per year.

As a condition of her contract, Patel agreed to pass her medical boards in anesthesiology within two years. Patel, however, failed to pass her boards within two years. Consequently, SMH notified her in October 1990 of its intent to terminate her contract, but allowed her temporarily to maintain her privileges under the contract. Subsequently, on March 27, 1991, SMH terminated the contract and withdrew Patel's contract privileges. While SMH allowed Patel to maintain staff privileges and to practice anesthesiology at the hospital, it forbade all CRNAs from working with her. CRNAs were allowed, however, to work with all other doctors with staff privileges.

The loss of the use of CRNAs meant that Patel could not maintain the practice she had built by superving the anesthesiology in numerous operations simultaneously. She was forced to cancel contracts she had with other physicians to provide anesthesiology services and she experienced a dramatic loss of income in her practice.

Patel filed a lawsuit against SMH, Davidson, and Wood alleging: (1) a Sherman Antitrust Act § 1 violation, 15 U.S.C. § 1; (2) a violation of North Carolina's antitrust laws; (3) tortious interference with contractual relations; (4) intentional infliction of severe emotional distress; and (5) breach of contract. Patel asked for and was granted permission to amend her complaint once.

_____

[1] As alleged in her complaint, Patel's contract provided that she was "to serve as the Medical Director of the Department of Anesthesiology at SMH, supervise its certified registered nurse anesthetists ("CRNAs") and provide twenty-four hour per day three-hundred-sixty-five days-per-year coverage of anesthesiology services for SMH, in exchange for which SMH agreed not to make any similar contractual agreement to any other anesthesiologist `for the medical direction of CRNAs.'" Complaint ¶ 7, amended complaint ¶ 7, and proposed second amended complaint, ¶ 7.

3

The district court dismissed all claims against the defendants under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted, with the exception of the breach of contract claim against SMH. Patel subsequently requested permission to amend her complaint a second time. The district court denied her motion to file a second amended complaint on the grounds that the amendment would be futile. The district court also dismissed the remaining contract claim for lack of subject matter jurisdiction, and dismissed the lawsuit. Patel appealed.

II.

Patel argues that the district court erred by: (1) dismissing her Sherman Antitrust Act, state antitrust, tortious interference with contract, and intentional infliction of emotional distress claims for failure to state a claim upon which relief could be granted; (2) refusing to allow her to amend further her complaint; and (3) refusing to exercise its supplemental jurisdiction over her breach of contract claim against SMH. We address each argument in turn.

A. Rule 12(b)(6) Dismissals

We review dismissals pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure de novo. Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217 (4th Cir. 1994). In conducting our review of a Rule 12(b)(6) dismissal, we construe the factual allegations in the nonmoving party's complaint as true. We will affirm "only if it appears that the plaintiff[ ] would not be entitled to relief under any facts which could be proved in support of[her] claim." Id. at 218 (citation omitted). Thus, we do not evaluate whether Patel has established any facts in comparison to those alleged by the defendants, but rather examine whether, if all the facts she alleged were true, she could make out her claims.

1. Sherman Act § 1 Claim

Patel argues that Davidson, Wood, and SMH conspired in violation of the Sherman Antitrust Act § 1, 15 U.S.C.§ 1, to prevent her from using CRNAs, which were essential to her practice. She concedes that

SMH, Davidson, and Wood had a right to terminate her contract based on her failure to pass the Boards. Her claim is based, thus, only on the defendants' decision to disallow CRNAs from working with her, which she contends was motivated by a malicious intent to destroy her practice.

Section one of the Sherman Antitrust Act prohibits combinations or contracts in restraint of trade.**2** In order to survive the defendants' Rule 12(b)(6) motion on a § 1 claim, Patel must allege facts which, if proven true, would establish the necessary elements of a Sherman Act § 1 violation: (1) an agreement between at least two legally distinct persons or entities; and (2) that the agreement imposed an unreasonable restraint on trade. Estate Constr., 14 F.3d at 220-21. Patel's amended complaint fails to allege adequately those two elements.

a. Agreement to Conspire

Unilateral action is not considered actionable under§ 1 of the Sherman Act. Thus § 1 applies only to concerted action. Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761 (1984). "Proof of concerted action requires evidence of a relationship between at least two legally distinct persons or entities." Oksanen v. Page Memorial Hosp., 945 F.2d 696, 702 (4th Cir. 1991) (en banc), cert. denied, 502 U.S. 1074 (1992). Under the doctrine of intraenterprise immunity, courts generally find that a company cannot conspire with its officers or employees because of the unity of economic interest between the company and its employees. Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769-71 (1984).

We have previously found that where the hospital staff acts as an agent of the hospital, the Board of Trustees of a hospital and the medical staff comprise a single entity and, therefore, are immune from Sherman Act § 1 lawsuits. Oksanen, 945 F.2d at 699, 703. Contra Bolt v. Halifax Hosp. Medical Ctr., 891 F.2d 810, 818-19 (11th Cir.),

_____

**2** Section 1 provides, in pertinent part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

5

cert. denied, 495 U.S. 924 (1990) (rejecting the rule that a hospital cannot conspire with its medical staff for purposes of § 1 liability).**3** We reasoned that a hospital and its staff have a unity of interest in seeking to provide and upgrade the quality of patient care. Oksanen, 945 F.2d at 703. "Far from being a competitor with the hospital, the medical staff [i]s in fact a natural component of the hospital's management." Id. Similarly, here, we conclude that SMH and its medical staff could not conspire with one another in violation of Sherman Act § 1 where the staff acted as the hospital's agent.

Patel seeks to distinguish Oksanen by arguing that Davidson and Wood did not act as agents of the hospital when they conspired to direct SMH's CRNAs not to work with her. We are not convinced. Members of the hospital staff, especially those with administrative positions, such as Chief Administrator, clearly have responsibilities to ensure adequate and quality care by the staff at the hospital, protect against malpractice, ensure efficient operation, cut costs, and the like. Staffing decisions and directives by the staff, and particularly the Chief of Staff or Chief Administrator, to that end are made as agents of the hospital. Patel had failed to meet the conditions of her contract. Thus, SMH and its agents had reasons to terminate her contract and to restrict her access to hospital resources.

Patel also argues that an exception to the intraenterprise immunity doctrine applies. Where the individuals on the medical staff have an independent personal stake in obtaining the objectives of the alleged conspiracy, intraenterprise immunity does not apply. Id. at 705. In Oksanen we explicitly limited the personal stake exception, however, to include only instances where the individual conspiring has a personal financial interest in the conspiracy independent of the principal --here SMH. Id.; see also Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1136-37 (3d Cir. 1995) (exception to intraenterprise conspiracy doctrine arises "only where an agent acts to further

_____

**3** The Eleventh Circuit has rejected expressly our holding in Oksanen, reasoning that the agency relations in the corporate context are different from those in a hospital where it finds that staff members are distinct and independent from the hospital. See also Oltz v. St. Peter's Community Hosp., 861 F.2d 1440, 1450 (9th Cir. 1988) (rejecting application of intraenterprise immunity doctrine to the hospital context).

6

his own economic interest in a marketplace actor which benefits from the alleged restraint and causes his principal to take the anticompetitive actions"); Pink Supply Corp. v. Hiebert, Inc., 788 F.2d 1313, 1318 (8th Cir. 1986) (personal stake exception applies only where agent of employer has "an economic stake in the gain to be realized from the anticompetitive conspiracy"). None of the defendants had a direct economic interest in Patel's status at SMH or competed with her. Thus, the personal stake exception does not apply.

Finally, Patel attempts to limit the holding in Oksanen to the peer review process only--the process by which the doctor in Oksanen had been excluded from practicing at a hospital and through which the doctor alleged the hospital and its staff had effected an illegal restraint of trade. We find the peer review distinction unhelpful. Where hospital staff acts as an agency of the hospital--whether it is through peer review or mere staffing decisions regarding efficiency, safety, quality, or similar issues--there is a unity of interests. That unity is only destroyed where the staff acts for a personal economic motive outside of its agency.

b. Antitrust Injury

Patel has also failed to allege adequately facts necessary to demonstrate an antitrust injury. Mere economic injury to Patel alone is insufficient. Instead, Patel must demonstrate an impact on the competition as a whole within the relevant market. Oksanen , 945 F.2d at 708.[4]

_____

[4] Patel argues that the exclusion of a single doctor from the market is sufficient to allege an antitrust injury. We first note that Patel has not necessarily even been excluded from the relevant market. She has only been denied the use of CRNAs at SMH. She may still practice anesthesiology at SMH by herself (although her ability to compete is somewhat hampered because of her inability to use CRNAs). There are no allegations that she has been unable to practice elsewhere because of SMH's actions. Furthermore, the case law she relies on, Summit Health, Ltd. v. Pinhas, 500 U.S. 322 (1991), addresses the jurisdictional prerequisite for filing an antitrust lawsuit. Oksanen, 945 F.2d at 702 n.1. In Oksanen, a summary judgment ruling, we found that while the jurisdictional prerequisite had been met, the plaintiff still failed to demonstrate an antitrust injury for purposes of surviving a motion for summary judgment. 945

7

There are two methods of demonstrating economic injury. The first is to demonstrate per se illegal agreements whose effects are so plainly anticompetitive that no elaborate study of the industry is needed. National Soc'y of Professional Eng'rs v. United States, 435 U.S. 679, 692 (1978). Patel concedes in her brief that she does not allege a per se Sherman Act violation.

The second approach is termed "the rule of reason." Id. at 692-93. Under a rule of reason analysis, the plaintiff must demonstrate an unreasonable restraint of trade. That requires Patel to allege in her complaint a relevant market, facts demonstrating that trade was restrained in that market, and that the defendants played a significant role in restraining trade. Oksanen, 945 F.2d at 708-09.

Patel alleges that the defendants' actions, which prohibited her from using CRNAs, destroyed her medical practice. The district court found, however, that her complaint was completely void of any allegations as to the effect of the defendants' actions on competition in the market for anesthesiology services, effect on the price of anesthesiology services, or effect on the availability of anesthesiology ser-

_____

F.2d at 702 n.1, 709. Patel's reliance on Pinhas asks the court, in essence, to adopt a more lenient standard on a motion to dismiss than is required on a motion for summary judgment. See Bracken v. Allegheny General Hosp., 64 F.3d 869, 875-78 (3d Cir. 1995). In effect, she requests that the court adopt a standard for alleging an antitrust injury that is similar, if not identical, to the jurisdictional requirement. The question of federal jurisdiction, however, is distinct from that of whether the underlying claim which supports jurisdiction fails to state a claim upon which relief can be granted. Re/Max Internat'l v. Realty One, Inc., 900 F. Supp. 132, 150 n.10 & 150 (N.D. Ohio 1995). Thus, we have held that when confronted with a Rule 12(b)(6) motion to dismiss a Sherman Antitrust Act § 1 claim, "we must determine whether allegations covering all the elements that comprise the theory for relief have been stated as required." Estate Constr., 14 F.3d at 220 (citation omitted). In an antitrust lawsuit, we require that the plaintiff plead facts in terms that are neither vague nor conclusory. Id. at 220-21. We, therefore, conclude that to survive a 12(b)(6) motion the plaintiff must allege sufficiently a cognizable antitrust injury, which includes allegations of negative impact on the relevant market.

8

vices to the public. Rather, it found her complaint focused on the injuries she incurred, not those the competitive market incurred. We agree.

All Patel has alleged is a staffing decision, allegedly based on malice, which the court is not in a position to second guess. Only where the anticompetitive effects were obvious could Patel rely on her meager pleadings. Oksanen, 945 F.2d at 79. Furthermore, there were legitimate grounds for the staffing decision--Patel failed to pass her Boards as required by her contract. Thus, the defendants had reason to limit Patel's access to the hospital's resources. Repeatedly, courts have found that a staffing decision by a single hospital as to a single practitioner, in the absence of harm to the relevant market, does not constitute an antitrust injury. Oksanen, 945 F.2d at 708-10; BCB Anesthesia Care, Ltd. v. Passavant Memorial Area Hosp. Ass'n, 36 F.3d 664, 667-69 (7th Cir. 1994) (listing numerous cases). Personal economic injury alone, e.g., loss of income, is simply not enough to support a claim under § 1 of the Sherman Act. There must be some cognizable effect on the competitive market. Thus, we affirm the district court's dismissal of Patel's Sherman Antitrust Act § 1 claim.

2. Remaining State Claims

The district court also dismissed Patel's state antitrust claim, her tortious interference with contractual relations, and her intentional infliction of emotional distress claims for failure to state a claim upon which relief could be granted. We have reviewed those claims and the record and adopt the reasoning of the district court as to those claims.

B. Rule 12(b)(1) Dismissal

The district court dismissed Patel's one remaining claim against SMH for lack of subject matter jurisdiction. Patel alleged breach of contract against the defendants for failure to reimburse her for expenditures she incurred on their behalf. Patel conceded that the claim applied only to SMH. After the dismissal of Patel's Sherman Act claim, no federal question jurisdiction remained. After the dismissal of three of the four remaining state claims, diversity jurisdiction no longer applied because the sole remaining claim was for $45,000--an amount insufficient to meet the jurisdictional requirements of diver-

sity jurisdiction. 28 U.S.C. § 1332(a). SMH therefore moved to dismiss the breach of contract claim under Rule 12(b)(1) of the Rules of Federal Civil Procedure for lack of subject matter jurisdiction.

The district court refused to exercise its supplemental jurisdiction over the breach of contract claim and dismissed it without prejudice. Where the district court has dismissed all claims that conferred federal jurisdiction, it may decline to exercise its supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). Patel contends on appeal, however, that the district court should have exercised its supplemental jurisdiction over the breach of contract claim.

We review a refusal to exercise supplemental jurisdiction for abuse of discretion. Shanaghan v. Cahill, 58 F.3d 106, 112-13 (4th Cir. 1995). Courts generally refuse to exercise supplemental jurisdiction where the claims conferring jurisdiction were dismissed at a very early stage and there is no overriding interest in economy or convenience dictating that the federal court retain jurisdiction. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Stetka v. Hunt Real Estate Corp., 859 F. Supp. 661, 668-69 (W.D. N.Y. 1994). Indeed, dismissal in such a case is the preferred course of action unless there are overriding factors in favor of retaining federal jurisdiction. Here, no factors dictated that the court retain its jurisdiction. Therefore, we conclude that the district court did not abuse its discretion.

C. Refusal to Allow Further Amendments to Complaint

The district court allowed Patel to amend her complaint once. It, however, refused to allow Patel to amend her complaint a second time. We review the district court's denial of Patel's second motion to amend her complaint for abuse of discretion. New Beckley Mining Corp. v. International Union, United Mine Workers of America, 18 F.3d 1161, 1164 (4th Cir. 1994).

Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party" after a responsive pleading had been served. "[L]eave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave, however, need not be granted

10

where the proposed amendment would be futile. <u>New Beckley Mining</u>, 18 F.3d at 1164. We have reviewed Patel's proposed second amended complaint and conclude that the district court's finding that the amendment would be futile and resulting refusal to allow the amendment were not an abuse of discretion.

For the foregoing reasons, we

<u>AFFIRM</u>.

11